## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MYPORT TECHNOLOGIES, INC.

      Plaintiff,

v.

APPLE INC.

      Defendant.

C.A. No. 24-1337-JDW

## DEFENDANT APPLE INC.'S OPENING BRIEF IN SUPPORT OF
## MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

OF COUNSEL:

Roger A. Denning (*pro hac* pending)
Joy Backer Kete (*pro hac* pending)
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Telephone: 858-678-5070
denning@fr.com
kete@fr.com

Kathryn Quisenberry (*pro hac* pending)
Jacqueline T. Moran (*pro hac* pending)
FISH & RICHARDSON P.C.
909 Fannin Street, Suite 2100
Houston, TX 77010
Telephone: 713-654-5300
quisenberry@fr.com
jtmoran@fr.com

Noah C. Graubart (*pro hac* pending)
FISH & RICHARDSON P.C.
1180 Peachtree Street NE, 21st Floor
Atlanta, GA 30309
Telephone: 404-892-5005
graubart@fr.com
Jenna Kuh (*pro hac* pending)
FISH & RICHARDSON P.C.
1000 Maine Avenue SW, Suite 1000

Susan E. Morrison (#4690)
Nitika Gupta Fiorella (#5898)
FISH & RICHARDSON P.C.
222 Delaware Ave., 17th Floor
Wilmington, DE 19801
Telephone: (302) 652-5070
morrison@fr.com
fiorella@fr.com

Washington, D.C. 20024
Telephone: 202-783-5070
kuh@fr.com

Kyle J. Fleming (*pro hac* pending)
FISH & RICHARDSON P.C.
7 Times Square, 20th Floor
New York, NY 10036
Telephone: 212-765-5070
kfleming@fr.com

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................... 1

II.   NATURE AND STAGE OF THE PROCEEDINGS ......................................... 2

III.  SUMMARY OF THE ARGUMENT .......................................................... 2

IV.  LEGAL STANDARDS ........................................................................... 3

V.   ARGUMENT ....................................................................................... 5

    A.   The Speech and Image Recognition Patents Claim Ineligible Subject
          Matter ......................................................................................... 5

        1.    Background of the '066 Patent, '017 Patent, and '067 Patent ................... 5

        2.    Claim 13 of the '066 Patent Is Representative........................................... 6

        3.    *Alice* Step One: The Claims Are Directed to the Abstract Idea of
             Collecting, Converting, Tagging, and Storing Data ................................ 8

        4.    *Alice* Step Two:  The Claims Lack an Inventive Concept ....................... 12

    B.   The '998 Patent Covers Patent-Ineligible Subject Matter .................................... 16

        1.    Background of the '998 Patent ................................................................. 16

        2.    Claim 1 of the '998 Patent Is Representative........................................... 17

        3.    *Alice* Step One:  The '998 Patent Claims Are Directed to an Abstract
             Idea........................................................................................... 18

        4.    *Alice* Step Two:  The Claims Lack an Inventive Concept ....................... 21

    C.   MyPort Fails To Plausibly Plead Indirect Infringement of the '998 Patent ......... 22

        1.    MyPort Does Not Plead Actual Knowledge of the '998 Patent............... 23

        2.    MyPort Fails To Adequately Plead Willful Blindness of the '998 Patent 24

    D.   The Complaint Fails To Plausibly Plead Willful Infringement ............................ 25

VI.  CONCLUSION..................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*,
  728 F.3d 1336 (Fed. Cir. 2013)...................................................................10, 21

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*,
  838 F.3d 1253 (Fed. Cir. 2016)......................................................................3, 10

*AI Visualize, Inc. v. Nuance Commc'ns, Inc.*,
  97 F.4th 1371 (Fed. Cir. 2024) ........................................................................3, 8

*Alice Corp. v. CLS Bank Int'l*,
  573 U.S. 208 (2014)....................................................................................... *passim*

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...............................................................................................24

*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
  827 F.3d 1341 (Fed. Cir. 2016)...........................................................................10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................................................3

*Bilski v. Kappos*,
  561 U.S. 593 (2010)................................................................................................3

*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*,
  778 F. App'x 882 (Fed. Cir. 2019) .....................................................................9

*ChargePoint, Inc. v. SemaConnect, Inc.*,
  920 F.3d 759 (Fed. Cir. 2019).......................................................................10, 21

*Commil USA, LLC v. Cisco Systems, Inc.*,
  575 U.S. 632 (2015)............................................................................................4, 23

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014)...........................................................6, 8, 15, 17

*DDR Holdings, LLC v. Hotels.com, L.P.*,
  773 F.3d 1245 (Fed. Cir. 2014)..................................................................11, 12, 15

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016)............................................................8, 11, 14, 21

ii

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016)........................................................................20

*Genetic Techs. Ltd. v. Merial L.L.C.*,
  818 F.3d 1369 (Fed. Cir. 2016)........................................................................14

*Global-Tech Appliances, Inc. v. SEB S.A.*,
  563 U.S. 754 (2011)............................................................................4, 23, 24

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*,
  60 F.4th 1349 (Fed. Cir. 2023) ......................................................................8, 12

*Helios Streaming, LLC v. Vudu, Inc.*,
  No. 19-1792-CFC-SRF, 2020 WL 2332045 (D. Del. May 11, 2020) ............................23, 25

*Intell. Ventures I LLC v. Cap. One Fin. Corp.*,
  850 F.3d 1332 (Fed. Cir. 2017)........................................................................8, 9

*Intell. Ventures I LLC v. Capital One Bank (USA)*,
  792 F.3d 1363 (Fed. Cir. 2015)........................................................................10

*Intellectual Ventures I LLC v. Erie Indemnity Co.*,
  850 F.3d 1315 (Fed. Cir. 2017)......................................................................9, 12, 19

*Luxer Corp. v. Parcel Pending, Inc.*,
  No. 1:24-CV-00604-JCG, 2025 WL 417049 (D. Del. Feb. 6, 2025) ...............................14

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
  837 F.3d 1299 (Fed. Cir. 2016)........................................................................20

*Monec Holding AG v. Motorola Mobility, Inc.*,
  897 F. Supp. 2d 225 (D. Del. 2012)....................................................................25

*Netgear, Inc. v. Ruckus Wireless, Inc.*,
  852 F. Supp. 2d 470 (D. Del. 2012)....................................................................25

*PersonalWeb Techs. v. Google LLC*,
  8 F.4th 1310 (Fed. Cir. 2021) ......................................................9, 10, 11, 14, 21

*Realtime Data LLC v. Array Networks Inc.*,
  556 F. Supp. 3d 424 (D. Del. 2021)..................................................................12, 13

*Robocast, Inc. v. Netflix, Inc.*,
  640 F. Supp. 3d 365 (D. Del. 2022)....................................................................4

*Secured Mail Solutions LLC v. Universal Wilde, Inc.*,
  873 F.3d 905 (Fed. Cir. 2017)........................................................................20

*Simio, LLC v. FlexSim Software Prods. Inc.*,
  983 F.3d 1353 (Fed. Cir. 2020).......................................................................12, 13

*Solutran, Inc. v. Elavon, Inc.*,
  931 F.3d 1161 (Fed. Cir. 2019)..............................................................................3

*St. Clair Intell. Prop. Consultants, Inc. v. Hewlett–Packard Co.*,
  No. 10-425, 2012 WL 1134318 (D. Del. Mar. 28, 2012)......................................25

*Synopsys, Inc. v. Mentor Graphics Corp.*,
  839 F.3d 1138 (Fed. Cir. 2016).......................................................................10, 21

*In re TLI Commc'ns LLC Pat. Litig.*,
  823 F.3d 607 (Fed. Cir. 2016)................................................................................3

*Trading Tecs. Int'l, Inc. v. IBG LLC*,
  921 F.3d 1378 (Fed. Cir. 2019)............................................................................19

*Two-Way Media Ltd. v. Comcast Cable Commc'ns LLC*,
  874 F.3d 1329 (Fed. Cir. 2017)............................................................................14

*Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*,
  916 F.3d 1363 (Fed. Cir. 2019).................................................................11, 20, 21

*Universal Secure Registry LLC v. Apple Inc.*,
  10 F.4th 1342 (Fed. Cir. 2021) ..................................................................... *passim*

*Välinge Innovation AB v. v. Halstead New England Corp.*,
  No. 16-1082, 2018 WL 2411218 (D. Del. May 29, 2018) ..................................4, 5

*Walker Digital, LLC v. Facebook, Inc.*,
  852 F. Supp. 2d 559 (D. Del. 2012)......................................................................25

*WhitServe LLC v. Donuts Inc.*,
  390 F. Supp. 3d 571 (D. Del. 2019), *aff'd*, 809 F. App'x 929 (Fed. Cir. 2020) ......................3

*Yu v. Apple Inc.*,
  1 F.4th 1040 (2021)..............................................................................................15

*ZapFraud, Inc. v. Barracuda Networks, Inc.*,
  528 F. Supp. 3d 247 (D. Del. 2021).....................................................................23

**Statutes**

Patent Act Section 101 ...............................................................................3, 14, 16, 20

**Other Authorities**

Rule 12(b)(6)..................................................................................................................3, 12

## I.    INTRODUCTION

The law forbids patenting abstract ideas.  But each of MyPort's asserted claims are directed to an abstract idea, meaning they are ineligible for patent protection and the Court should dismiss MyPort's Complaint.  The claims of MyPort's "Speech and Image Recognition Patents"—the '066, '017, and '067 patents—are directed to the abstract idea of collecting, converting, tagging, and storing data.  They recite only conventional data-focused steps, not any improvement in underlying technology or any specific implementation of this abstract idea.  They are similar to claims the Federal Circuit has previously held abstract, and thus patent ineligible.  The remainder of each claim likewise lacks an inventive concept.  The claims use long-existing technology—e.g., "a microphone," "a camera," and "internal storage"—to perform the well-known, routine, and conventional activities of collecting, converting, tagging, and storing data.

MyPort's now-expired '998 patent fares no better.  The claims of the '998 patent are directed to the abstract idea of collecting and transmitting encrypted digital media information for storage and authentication.  They recite only conventional encryption, storage, and authentication functions and do not describe any improvement in computer functionality; they are thus similar to other claims the Federal Circuit has held abstract.  Moreover, the remainder of the claims do not contain an inventive concept because they use conventional computer components—e.g., a "processor" or "transmitter"—to perform well-known, routine, and conventional activities.

Additionally, as to the '998 patent, MyPort's Complaint fails to state a claim for indirect or willful infringement, both of which require at a minimum knowledge of the patent.  Because the Complaint fails to assert any factual allegations from which the Court could plausibly infer that Apple had knowledge of the '998 patent before this lawsuit, and because the '998 patent expired before this lawsuit was filed, MyPort's indirect and willful infringement allegations are insufficient as a matter of law.

1

Accordingly, because the asserted patents claim ineligible subject matter, MyPort's Complaint fails to state a claim on which relief can be granted, and Apple respectfully requests the Court dismiss the Complaint with prejudice. At a minimum, the Court should dismiss MyPort's indirect and willful infringement claims as to the '998 patent because MyPort has not alleged any facts suggesting Apple had pre-suit knowledge of the patent.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

On December 6, 2024, MyPort filed the Complaint against Apple, alleging infringement of four patents, U.S. Patent Nos. 9,832,017 (the '017 patent), 10,237,067 (the '067 patent), 10,721,066 (the '066 patent), and 11,188,998 (the '998 patent). *See* D.I. 1. Apple moves to dismiss the Complaint in its entirety.

## III.    SUMMARY OF THE ARGUMENT

1.    MyPort's asserted patents claim patent-ineligible subject matter, and MyPort's Complaint therefore fails to state a claim on which relief can be granted. The '017, '067, and '066 patent claims are directed to the abstract idea of collecting, converting, tagging, and storing data. Similarly, the '998 patent claims are directed to the abstract idea of collecting and transmitting encrypted digital media information for storage and authentication. The Federal Circuit has repeatedly held similar claims invalid as directed to abstract ideas. And the remainder of the asserted patent claims do not contain an inventive concept sufficient to transform the claims into patent-eligible applications of the abstract ideas.

2.    MyPort has failed to plead factual allegations from which the Court could plausibly infer that Apple had any pre-suit knowledge of the '998 patent. Because knowledge of the patent is required for indirect infringement and willfulness—and the '998 patent expired more than a year prior to MyPort's Complaint—MyPort has not adequately pleaded indirect or willful infringement of the '998 patent.

2

## IV.    LEGAL STANDARDS

**Patent-eligible subject matter:** To survive a Rule 12(b)(6) motion, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Section 101 of the Patent Act defines patent-eligible subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101.  The Supreme Court has held there are certain exclusions and that "[l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) ("*Alice*") (quotation omitted). "[N]ot every § 101 determination contains genuine disputes over the underlying facts." *Id.*  That is why courts routinely resolve the "threshold" issue of patentability at the Rule 12(b)(6) stage. *See e.g.*, *Bilski v. Kappos*, 561 U.S. 593, 602 (2010); *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 610 (Fed. Cir. 2016); *AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1377 (Fed. Cir. 2024).

To determine patent-eligibility, courts apply a two-step framework. *Alice*, 573 U.S. at 217. At *Alice* step one, courts ask "whether the claims at issue are directed to a patent-ineligible concept, such as an abstract idea." *Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1346 (Fed. Cir. 2021).  This inquiry looks at the "focus of the claimed advance over the prior art to determine if the claim's character as a whole is directed to excluded subject matter." *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) (quotation marks omitted).  Claims that "simply recite conventional actions in a generic way . . . and do not purport to improve any underlying technology" are commonly held abstract. *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1168 (Fed. Cir. 2019).  And "mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea." *WhitServe LLC v. Donuts Inc.*, 390 F. Supp. 3d 571, 578 (D. Del. 2019), *aff'd*, 809 F. App'x 929 (Fed. Cir. 2020); *Alice*, 573 U.S. at 223.

If the claims are directed to a patent-ineligible concept, the Court proceeds to *Alice* step two, looking at "the elements of [the] claim both individually and as an ordered combination" to see if there is an "inventive concept sufficient to transform" the abstract idea into a patent-eligible application. *Alice*, 573 U.S. at 217-18. In particular, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Id.* at 222. Thus, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* at 223.

**Indirect infringement:** For indirect infringement, a complaint must plead facts plausibly showing that the accused infringer had "knowledge of the patent in suit and knowledge of patent infringement." *Robocast, Inc. v. Netflix, Inc.*, 640 F. Supp. 3d 365, 370-71 (D. Del. 2022); *Commil USA, LLC v. Cisco Systems, Inc.,* 575 U.S. 632, 639 (2015); *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011). At the very least, if a plaintiff cannot or does not plead actual knowledge, it must plead facts sufficient to show the defendant was willfully blind to the infringement—*i.e.*, that the defendant (1) subjectively believed that there was a high probability that the induced acts constituted infringement and (2) took deliberate actions to avoid learning of that fact. *Global-Tech Appliances*, 563 U.S. at 768.

**Willful infringement:** To survive a motion to dismiss a willful infringement claim, this Court requires a patentee to allege facts plausibly showing that *as of the time of the claim's filing*, the accused infringer: (1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent. A bare allegation of willfulness does not survive a motion to dismiss. *See Välinge Innovation AB v. v. Halstead New England Corp.*, No. 16-1082, 2018 WL 2411218, at *13 (D. Del. May 29, 2018).

## V.    ARGUMENT

### A.    The Speech and Image Recognition Patents Claim Ineligible Subject Matter

#### 1.    Background of the '066 Patent, '017 Patent, and '067 Patent

Three of the four asserted patents—which MyPort calls the "Speech and Image Recognition Patents" (*see, e.g.,* D.I. 1 ¶¶ 16, 22-24, 27-29)—are from the same patent family and share the same specification.

According to the '066 patent, the "ability to store virtually unlimited numbers of media files" on one's device created problems. '066 patent at 2:53-60.[1]  For example, the '066 patent describes difficulties with indexing and transferring large numbers of media files and problems with the recipient locating a particular file when media files are sent to another user. *Id.* at 2:53-3:15.  The claims purport to address this problem by claiming the abstract idea of collecting, converting, tagging, and storing data.

Critically, the patent acknowledges that, at the time of the alleged invention, indexing programs already existed that allowed a user "to type in key index words (tags) for searching and retrieving these media files from their personal computer." *Id.* at 3:7-10.  The specification emphasizes using conventional components for each step required by the claims.  For example, the patent describes that the data converter used to organize data into a data element "is any type of device that will capture the information and place it in some type of digitized format," and that any of "several well-known stenographic techniques" can be used to embed metadata into the data element. *Id.* at 4:10-67.  It similarly describes creating a composite data set "using one of a number of well-known algorithms," e.g., "the well-known ZIP compression algorithm" and using any number of methods to create searchable tags for the data set. *Id.* at 4:58-67, 6:3-14, 6:41-44, 7:61-

---

[1]Each '066 patent specification citation is also found in the '017 and '067 patents.

64, 10:29-32.

### 2.    Claim 13 of the '066 Patent Is Representative

MyPort's Complaint identifies certain "exemplary" claims from the Speech and Image Recognition Patents: claim 13 of the '066 patent, claim 13 of the '017 patent, and claim 6 of the '067 patent.  D.I. 1 ¶¶ 40, 56, 72.  MyPort's Complaint cites the same infringement evidence across each of the exemplary claims.  D.I. 1 ¶¶ 71-81, 40-48, 55-64.  MyPort thus tacitly concedes that these claims, along with the rest of the claims from these patents, are "substantially similar and linked to the same abstract idea," so the Court need not address each individually.  *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).  As such, claim 13 of the '066 patent is representative of the Speech and Image Recognition Patents' claims.

For illustration, the color-coded chart below shows each limitation of claim 13.  Though the claim uses many words, it involves a simple three-step process: The first step (in blue) relates to capturing audio with a microphone, an image with a camera, and location and time information (e.g., metadata) with a capture device (the capturing step).  The second step (in orange) relates to recognizing the captured image and audio and converting them into searchable tags using speech-to-text conversion and image recognition (the converting and tagging step).  And the third step (in purple) relates to storing the digital image in internal storage (the storing step).

| Claim Element |
|---|
| 13[pre]. A method for capturing image and audio information for storage, comprising the steps of: |
| 13[a]: providing internal storage; |
| 13[b]: interfacing a microphone with an external audio information source that generates external audio information and converting with a first data converter the external audio information from the microphone; |

| 13[c]: interfacing a camera with an image source to capture an image therefrom; |
| :--- |
| 13[d]: capturing with a capture device, as captured data, location information and time information associated with at least the capture of the image and storing the captured data as stored captured data; |
| 13[e]: the first data converter processing the captured external audio information and storing it in a first digital audio format as stored digital audio within the capture device, the camera for processing the captured image and storing it as a stored digital image; |
| 13[f]: converting with a second data converter the received digital audio to a text based searchable file as a text context tag and creating an image recognition searchable context tag with image recognition of at least a portion of the digital image and associating the text and image recognition context tags with the digital image and with the stored captured data; and |
| 13[g]: storing in the internal storage the digital image in association with the text and image recognition context tags in addition to the stored captured data. |

'066 patent at 12:47-13:7.

Claim 13 thus merely recites collecting, converting, tagging, and storing data using conventional hardware components. The system claims of the '017 and '067 patents are no different in substance; they recite conventional components configured to implement the same functions. During the parties' letter briefing, MyPort identified only the "combiner" limitation of claim 6 of the '017 patent as allegedly being different in substance from claim 13 and the other claims of the Speech and Image Recognition Patents. But the addition of a "combiner" in claim 6 is not meaningful. Instead, the specification confirms the "combiner" merely performs the conventional activity of combining two sets of data into one file. '017 patent at 4:33-44. Indeed, even if the Court were to consider claim 6 of the '017 patent separately from claim 13 of the '066 patent for this analysis, the "combiner" limitation would not save the claim from abstraction (as discussed below). Moreover, the other dependent or independent claims of the Speech and Image Recognition Patents are directed to the same abstract idea as claim 13, and, as discussed below, they contain no inventive concept beyond the abstract idea to transform them into patent-eligible

7

subject matter.

### 3.    *Alice* Step One: The Claims Are Directed to the Abstract Idea of Collecting, Converting, Tagging, and Storing Data

Claim 13 of the '066 patent is directed to the abstract idea of collecting, converting, tagging, and storing data.  As shown in the color-coded claim above, the preamble and each limitation of the claim is drawn to one or more of these data-focused concepts.  And, importantly, these data-focused concepts are similar to ones the Federal Circuit has routinely held abstract.  *See Content Extraction*, 776 F.3d at 1347 (holding the concept of "1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory" abstract); *see also Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353-54 (Fed. Cir. 2016) ("collecting information" is "within the realm of abstract ideas"); *AI Visualize*, 97 F.4th at 1378 ("converting information from one format to another . . . is an abstract idea"); *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1357-58 (Fed. Cir. 2023) (claim for "receiving video images, . . . [and] storing at least a subset of the converted images" held abstract); *Intell. Ventures I LLC v. Cap. One Fin. Corp.*, 850 F.3d 1332, 1340 (Fed. Cir. 2017) (claims for retrieving, manipulating, updating, creating, and displaying extensible markup language (XML) documents were "directed to the abstract idea of collecting, displaying, and manipulating data").

MyPort's characterization of the Speech and Recognition Patents' claimed advance confirms that their claims are directed to abstract ideas.  MyPort asserts the claims address "a specific improvement to the way in which image and audio information can be stored and searched on digital media devices," and then it identifies two aspects of that alleged improvement: (1) "the use of speech recognition and image recognition, such as artificial intelligence, to create metadata searchable tags," and (2) the use of certain "materials (such as a microphone, camera, data converter, transmitter, etc), structures and systems, together with software, to enhance and improve

upon the capturing and storing of image and audio information."  D.I. 1 ¶ 28.  But these supposed improvements merely reflect the use "of conventional components in a conventional way to achieve an expected result," and not any "technological improvement to computer functionality itself" and thus do not pass muster under *Alice* step one.  *Universal*, 10 F.4th at 1350.  Importantly, there is nothing "specific" about the alleged improvements; instead, the claims fail to provide any specific details as to ***how*** these alleged improvements are realized.

For example, as to MyPort's first alleged improvement, claim 13 does not recite any specific improvement in tag creation.  The Federal Circuit has repeatedly held similar claims that relate to creating searchable tags as directed to an abstract idea.  For example, in *Intellectual Ventures I LLC v. Erie Indemnity Co.*, the Federal Circuit held abstract claims directed to "creating an index and using that index to search for and retrieve data."  850 F.3d 1315, 1327 (Fed. Cir. 2017).  There, like here, the index included "tags" and "metafiles" that provided information about the tag.  *Id.*  The Federal Circuit reasoned that "[t]his type of activity, organizing and accessing records through the creating of an index-searchable database" involves "longstanding conduct that existed well before the advent of computers and the Internet."  *Id.*  Similarly, the Federal Circuit in *PersonalWeb Techs. v. Google LLC*, held that using "content-based identifiers" to search and organize resources was an abstract idea, and "[g]enerating such identifiers via a known algorithm is no less abstract."  8 F.4th 1310, 1316 (Fed. Cir. 2021); *see also Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 890 (Fed. Cir. 2019) (finding "tagging" is an abstract idea).  Here, claim 13 similarly recites the abstract idea of creating searchable tags, without any specific improvement to underlying technology.

That MyPort says the claim uses speech recognition and image recognition to create the tags does not change the analysis.  First, the specification confirms that the speech recognition and

image recognition existed at the time of the alleged invention. '066 patent at 5:62-6:14, 6:41-44, 10:29-32, 7:61-64. The use of an existing technology does not make an abstract idea less abstract. *See PersonalWeb*, 8 F.4th at 1316 ("Generating [content-based] identifiers via a known algorithm is no less abstract."); *Affinity Labs*, 838 F.3d at 1259 ("[M]erely limiting the field of use of the abstract idea to a particular existing technological environment does not render the claims any less abstract."); *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1348 (Fed. Cir. 2016) ("An abstract idea on 'an Internet computer network' . . . is still an abstract idea."); *Intell. Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1366 (Fed. Cir. 2015) ("An abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment, such as the Internet."). Second, the claims do not require the use of any specific type of speech or image recognition, much less purport to improve the functionality of existing speech and image recognition technology. That much is confirmed by the specification, which merely states that "[t]he tag generation is performed by a speech-to-text function or by an image recognizer," '066 patent at 10:29-32, and that, "[f]or audio files, this may include a speech-to-text algorithm; for still or moving images, it may include image recognition and identification," *id.* at 6:5-7. This lack of specificity confirms that the claim merely recites the use of conventional technology, and not any improvement to that technology. *Universal*, 10 F.4th at 1350.

Similarly, MyPort's citation of artificial intelligence as an example of speech recognition and image recognition, D.I. 1 ¶ 8, does not make the claim less abstract. The claim says nothing about using artificial intelligence, so it cannot be the "focus" of the claimed advance. *See ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019); *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016); *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013). The specification does not

10

mention artificial intelligence either; in fact, it says that the "tag generation is performed by a human operator," '066 patent at 10:29-30, and that it is "presumed that, *as image and voice recognition improve*; this task can be fully automated," *id.* at 6:11-14 (emphasis added). Finally, even if artificial intelligence were claimed, that would not render the claim non-abstract. First, the claim recites only the ***result*** of creating searchable tags without explaining ***how*** to use artificial intelligence to accomplish that result, confirming that the claim is not directed to any improvement in tagging technology. *Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1368 (Fed. Cir. 2019); *Elec. Power Grp.*, 830 F.3d at 1354. Second, requiring the use of artificial intelligence to implement the abstract idea of tagging is still abstract and thus fails step one. *See PersonalWeb*, 8 F.4th at 1318 ("mere automation of manual processes using [conventional components]" fails step one); *Univ. of Fla.*, 916 F.3d at 1367 ("automat[ing] 'pen and paper methodologies'" is abstract concept).

MyPort's second alleged improvement—using hardware and software components to "enhance and improve upon the capturing and storing of image and audio information"—fares no better. D.I. 1 ¶ 28. Claim 13's recited method for capturing and storing data is "not rooted in any new computer technology" and does not reflect any specific "improvement in computer capabilities." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1265 (Fed. Cir. 2014). Instead, for capturing the data, the claim merely recites using "a capture device" without any specifics, and the specification confirms "***any type of device*** that will capture the information and place it in some type of digitized format" can be used. '066 patent at 4:19-21 (emphasis added). Similarly, claim 13 merely recites "providing internal storage" and "storing" the data in various formats, without any suggestion that the claimed storage steps reflect an improvement in the

underlying technology.  Thus, even if these aspects were the "focus of the claimed advance" over the prior art, they would not render the claim any less abstract.

Finally, MyPort's suggestion that the claimed invention "improves the functioning of a digital media device" does not render the claim non-abstract.  D.I. 1 ¶ 27.  MyPort says its method "sav[es] storage space," allows "users to more quickly tag their images in a searchable format," and "prevent[s] the keys to image storage and organization . . . from being lost when the image is transferred from one device to another."  *Id.*  But MyPort cites nothing in the claims or the specification to support that the claimed method achieves these improvements, so this conclusory attorney argument is insufficient to survive a motion to dismiss.  *See Simio, LLC v. FlexSim Software Prods. Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020) ("We disregard conclusory statements when evaluating a complaint under Rule 12(b)(6) . . . A statement that a feature 'improves the functioning and operations of the computer' is, by itself, conclusory.");  *Realtime Data LLC v. Array Networks Inc.*, 556 F. Supp. 3d 424, 435 (D. Del. 2021) (disregarding conclusory statements).  Indeed, claim 13 "fail[s] to recite a specific solution to make the alleged improvement[s]" and thus "lack[s] sufficient recitation of *how* the purported invention improve[s] the functionality" of a digital media device.  *Hawk Tech. Sys.*, 60 F.4th at 1358 (quotation marks omitted).  Finally, to the extent MyPort relies on the step of storing the image "in association with" the context tags as preventing loss of tags upon transfer, the Federal Circuit has already held similar "associating" steps as abstract ideas.  *Erie*, 850 F.3d at 1325 (holding database searching claims abstract where the records to be searched were "associated with" descriptive terms).

### 4.    *Alice* Step Two:  The Claims Lack an Inventive Concept

Claim 13 of the '066 patent also fails *Alice* step two because, whether its elements are considered individually or as an ordered combination, it does not add any "inventive concept" beyond the abstract idea to transform it into patent-eligible subject matter.  *Alice*, 573 U.S. at 221.

Instead, the claim merely recites well-understood, routine, and conventional activities. *Id*. at 217.

Importantly, MyPort does not contest, nor could it, that the majority of limitations in claim 13 reflect routine, conventional, and well-known concepts. *See* D.I. 1 ¶¶ 27-29. Instead, MyPort identifies a few discrete limitations and components that it says, without support, are not routine or conventional. Such conclusory allegations (that are in fact contradicted by the specification) are insufficient to survive a motion to dismiss. *See Simio*, 983 F.3d at 1365; *Realtime Data*, 556 F. Supp. 3d at 435.

For example, MyPort alleges that "the use of speech recognition and image recognition to create searchable tags as associated metadata for images was not routine or conventional," D.I. 1 ¶ 28, but the only section of the specification MyPort cites confirms the opposite. It describes, for example, that the storage facility can create "context tags that describe elements of the scene or image(s), such as 'animal,' or 'dog,' or 'Spot'" using any of a number of methods, including a non-specific "speech-to-text algorithm." '066 patent at 5:62-6:11; *see also id.* at 10:30-32 ("The tag generation is performed by *a* speech-to-text function or by *an* image recognizer.") (emphasis added). Further confirming that the method is not inventive, the specification continues, "*[w]hatever the method used*, at the end of the process the set of data to store includes the data element 102, the context element 110, and meta data 106 that now includes a set of searchable tags specific to that image, video, audio or other media." *Id.* at 6:7-11. Other parts of the specification are consistent, noting for example that indexing programs existed that allowed a user "to type in key index words (tags) for searching and retrieving" data. *Id.* at 3:7-10; *see also id.* at 6:41-44, 7:61-64.

MyPort's assertion that storing the digital image in association with tags is inventive, D.I. 1 ¶ 29, is similarly insufficient to raise a dispute of fact. As an initial matter, this "association"

step is part of the abstract idea, and thus cannot supply the inventive concept. *See PersonalWeb*, 8 F.4th at 1316; *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1376 (Fed. Cir. 2016) ("The inventive concept necessary at step two of the *Mayo/Alice* analysis cannot be furnished by the unpatentable law of nature (or natural phenomenon or abstract idea) itself."). Further, MyPort supports this conclusory assertion only with a citation to the background section of the patent that merely describes the problem—losing tags on transfer of digital media—with no suggestion that the "associating" step amounts to a technical innovation. '066 patent at 3:4-15. Nor can it, as the claim recites a conventional step of associating two pieces of information and uses only "results-based functional" language to describe the alleged invention. *Two-Way Media Ltd. v. Comcast Cable Commc'ns LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017) (holding claim ineligible where it "only uses generic functional language to achieve the purported solutions"); *Elec. Power Grp.*, 830 F.3d at 1356 ("Indeed, the essentially result-focused, functional character of claim language has been a frequent feature of claims held ineligible under § 101.").

MyPort also alleges—without any support—the claimed "first data converter," "media/second data converter," and "combiner" are not generic structures or otherwise well-understood, conventional, or routine. D.I. 1 ¶ 29. But "the general language used by the ['066 patent] indicates that the[se] components are of a conventional and familiar type." *Luxer Corp. v. Parcel Pending, Inc.*, No. 1:24-CV-00604-JCG, 2025 WL 417049, at *11 (D. Del. Feb. 6, 2025) (granting motion to dismiss on Section 101 grounds). For example, the specification describes the "data converter" as "***any type of device*** that will capture the information and place it in some type of digitized format." '066 patent at 4:19-21 (emphasis added). MyPort's Complaint also acknowledges (and the specification confirms) that the "first data converter" is merely a processor performing the same recited function. D.I. 1 ¶ 46 ("Each Accused Product includes a first data

14

converter (e.g., relevant portions of the processor and associated software) that processes the user's words dictated into the microphone (i.e., the captured external audio information) to convert . . . ."); *see also* '066 patent at 3:28-38, Abstract.    The specification similarly confirms the "second/media data converter" is any device that "is capable of capturing some phenomenon into a secondary data set, related to but separate from the information captured by the primary data converter," including, for example, a microphone.  '066 patent at 4:50-54; 9:27-30.  The use of processors and microphones to capture data is well-understood, routine, and conventional.  *See DDR Holdings*, 773 F.3d at 1264; *Yu v. Apple Inc.*, 1 F.4th 1040, 1045 (2021) ("[T]he generic hardware limitations of [the claim] merely serve as "a conduit for the abstract idea.").

As to the claimed "combiner" (recited in claim 6 of the '017 patent), the specification again confirms this is a well-understood, routine, and conventional component.  Indeed, the specification does not describe anything unique about the "combiner," and instead describes it in terms of its conventional function—to "create[] a composite data set using one of a number of well-known algorithms for combining multiple data sets into a single data set."  '017 patent at 4:33-38; *see also id.* at 4:38-44 (noting "the well-known ZIP compression algorithm routinely performs statistical compression on a number of input files and creates a single output file").  There is nothing inventive about using a computer device to combine data into one file.  *See Content Extraction*, 776 F.3d at 1347-48 ("For the role of a computer in a computer-implemented invention to be deemed meaningful in the context of this analysis, it must involve more than performance of well-understood, routine, [and] conventional activities previously known to the industry."); *see also DDR Holdings*, 773 F.3d at 1265-66.

Finally, the dependent claims of the '066 patent do not add any limitations that can provide the inventive concept either.  Claim 14 recites the image source is external; claim 15 recites

15

capturing the audio information while it is being generated; claim 16 similarly adds capturing the image at an instant time; and claim 17 recites processing the captured audio information from a start event to a stop event (i.e., for a specific time period).[2]  Each of these are well-understood, routine, and conventional concepts, and MyPort does not allege otherwise in its Complaint. Further, the fact that the specification does not describe these additional limitations with any specific details underscores that these limitations are well-understood, routine, and conventional.

This Court should thus hold the claims of the Speech and Image Recognition Patents are invalid under Section 101 and grant Apple's motion to dismiss.

**B.    The '998 Patent Covers Patent-Ineligible Subject Matter**

**1.    Background of the '998 Patent**

According to the '998 patent, one of the problems of the widespread use of digital media is that "it has become increasingly easy to copy, counterfeit, falsify and misuse digital information of all kinds." '998 patent at 2:31-32.  The patent attributes this to the ease with which digital media and timestamps can be altered undetectably, and the overall lack of sufficient security in digital storage.  *Id.* at 2:35-41.

The '998 patent purports to address these concerns through encryption and digital signatures.  The patent states that its "invention provides for the secure non-repudiation by embedding Certificate Authorities non-repudiation Digital Certificates of the digital files for forensic or evidentiary purposes."  *Id.* at 2:50-53.  It further asserts that this system ensures that "only authorized personnel could then retrieve the encrypted messages and return the data to cleartext form."  *Id.* at 2:61-62.  However, the specification makes clear that the claimed method applies well-known encryption and authentication techniques to digital files, a concept that has

---

[2] The dependent claims of the '017 and '067 patents mirror those of the '066 patent.

long been conventional in the field of data security. *See, e.g.*, *id.* at 5:28-34 (describing certification techniques as "conventional technology"); *id.* at 6:19-25 (describing encryption technique as "conventional").

### 2.    Claim 1 of the '998 Patent Is Representative

The '998 patent's claims are "substantially similar and linked to the same abstract idea." *Content Extraction*, 776 F.3d at 1348.    Claim 1, the only claim expressly addressed in the Complaint (D.I. 1 ¶ 89), is representative of the claims of the '998 patent and its limitations are shown below.    Claim 1 involves seven steps.    The first step (in blue) is to capture information— either video, an image, or audio—and store it.    The second step (in orange) is to create a timestamp to accompany the file.    The third step (in red) is to encrypt the file and timestamp.    The fourth step (in purple) is to add signature information to the file to identify the creator.    The fifth step (in green) is to associate the file with subscriber information.    The sixth step (in yellow) is to send the file to a receiving facility, and the seventh step (in gray) is to receive the file and verify the subscriber information.

| Claim Element |
|---|
| 1[pre]: A method for interfacing with a device and acquiring information with the device from an environment external to the device to be transmitted to a receiving facility and for transmitting the acquired information thereto, comprising: |
| 1[a]: the device including a capture device and the capture device controlled to capture the information from the external environment where the information is selected from the group consisting of a video segment, a still image and an audio segment, each of which varies in real time in the external environment and relative to time in the external environment prior to capture by the capture device, and converting the information to converted information for storage in a storage area as captured information; |
| 1[b]: controlling a device processor to create a file comprised of a representation of the captured information associated with a representation of the date and time of the capture of the information as augmented captured information, wherein the representation of the date and time information in association with the representation of the captured information forms the file containing the augmented captured information; |
| 1[c]: controlling an encryptor on the device processor to encrypt the augmented captured information as an encrypted file containing encrypted augmented captured information, |
| 1[d]: controlling the device processor to initiate a signing operation for adding signature |

| |
|---|
| information to the file including the encrypted augmented captured information to provide an identifiable encrypted file, wherein the signature information provides information to the receiving facility that allows identification of the party claiming to have created the captured information for later identification of the party, |
| 1[e]: controlling the device processor to place the identifiable encrypted file including both the encrypted augmented captured information and the unencrypted signature information in association with subscriber information as a transmission file for transmission to a receiving facility requiring the subscriber information, the subscriber information required at the receiving facility for a lookup operation to obtain additional information to allow further processing of the augmented captured information at the receiving facility; |
| 1[f]: controlling a transmitter on the device for transmitting the transmission file to the receiving facility in order to further process the augmented captured information at the receiving facility; and |
| 1[g]: receiving the transmission file and accepting the identifiable encrypted file after verification of the subscriber information. |

Claim 1 of the '998 patent is directed to the abstract idea of collecting and transmitting encrypted digital media information for storage and authentication. The dependent claims are similarly directed to the same abstract idea, and they contain no inventive concept beyond the abstract idea to transform them into patent-eligible subject matter.

### 3.    *Alice* Step One:  The '998 Patent Claims Are Directed to an Abstract Idea

Claim 1 of the '998 patent is directed to the abstract idea of collecting and transmitting encrypted digital media information for storage and authentication. As shown in the table above, claim 1 recites only routine data gathering and manipulation steps that are described at such a high level of generality that they cannot "constitute an improvement to computer functionality itself." *Universal*, 10 F.4th at 1346.

MyPort's own characterization of the '998 patent claims' advance over the prior art confirms their abstractness. MyPort alleges the claimed invention solves prior art problems by "controlling an encryptor to encrypt the augmented captured information as an encrypted file and then to initiate a signing operation for adding signature information to the file and to place the identifiable encrypted file in association with subscriber information." D.I. 1 ¶ 33. MyPort's

attempt to label these "unconventional and non-generic" steps is divorced from the '998 patent itself, which repeatedly confirms that the claimed encryption techniques are conventional. The specification describes various techniques for encrypting that it says are "conventional" and "well-known," ('998 patent at 6:15-25, 8:8-11) and similarly describes the process to "digitally sign" a file as "conventional technology," *id*. at 5:33-34. Further, nothing in the claims or specification states or suggests anything unconventional about associating a file with subscriber information. *See Erie*, 850 F.3d at 1325 (holding database searching claims abstract where the records to be searched were "associated with" descriptive terms); *Trading Tecs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1378, 1383 (Fed. Cir. 2019) (holding claims associating profits/losses with making a trade at a specific price ineligible because "a skilled artisan would recognize the numerous ways to calculate this information"). MyPort points to nothing from the specification itself to support its argument.

Indeed, claim 1 is similar to those the Federal Circuit found abstract in *Universal*. The claims in *Universal* recited only conventional authentication steps, such as "(1) authenticate the user based on two factors . . . and (2) generate encrypted authentication information to send to the secure registry through a point-of-sale device," without improving any underlying technology. 10 F.4th at 1352. The Federal Circuit held the claims were directed to the abstract idea of "collecting and examining data to enable authentication." *Id.* Claim 1 of the '998 patent similarly recites a series of conventional steps: capturing digital media, associating it with date and time information, encrypting it, adding a signature, and transmitting it for authentication. These steps apply well-known processes for collecting and transmitting encrypted digital media information for storage and authentication, making the claim abstract under *Alice* step one.

MyPort's assertion (at D.I. 1 ¶ 30) that the '998 patent claims "improve[] security of digital information" does not render the claims less abstract, because claims lacking concrete, specific

solutions are ineligible under Section 101. *See Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 910–11 (Fed. Cir. 2017) (holding claims directed to affixing a barcode to mail were abstract because they did not specify any particular barcode structure or processing equipment); *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016) (question at step 1 is "whether the claims in these patents focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery"); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016). Here, the claims do not recite any specific encryption algorithm or signing/authentication method. And the specification provides that there are many well-known, routine, and conventional approaches to encryption and signing/authentication. *See* '998 patent at 5:28-34 (describing process to "digitally sign" a file as "conventional technology"), 6:23-25, 8:08-11, 8:22-24 (describing various known techniques for encryption as "conventional" and "well-known").

Further, the '998 patent is a quintessential "do it on a computer" patent; similar claims are regularly held ineligible. *See Univ. of Fla.*, 916 F.3d at 1367 (holding ineligible a patent claim which merely sought "to automate 'pen and paper methodologies'"). The claimed steps mirror well-established, real-world processes that have long been performed without a computer. Take, for example, a police detective processing evidence at a crime scene: the detective photographs the scene (capture digital media), notes the date and time, secures the evidence in a sealed envelope inside a locked glove compartment or trunk (encrypting the file), identifies the evidence with their name and badge number (signing the file and associating it with 'subscriber information'), transports the evidence to headquarters (transmitting the file to a storage facility), and ultimately submits it to the evidence locker, where another officer verifies their badge number before

accepting it (receiving and verifying the subscriber information).  These are routine steps in data collection, authentication, and transmission, performed without any technological innovation.  The '998 patent claims merely implement these well-understood, routine and conventional procedures on a computer, which the Federal Circuit has repeatedly found insufficient to confer patent eligibility. *See, e.g.*, *Elec. Power Grp.*, 830 F.3d at 1354; *Univ. of Fla.*, 916 F.3d at 1367; *PersonalWeb*, 8 F.4th at 1318-19.

Finally, to the extent MyPort alleges the claims recite a "specific means of generating a digital certificate that is encoded onto the image and/or audio files," that does not make them less abstract.  First, the claims do not require any digital certificate, much less recite a specific means for generating one.  *See ChargePoint*, 920 F.3d at 769; *Synopsys*, 839 F.3d at 1149; *Accenture*, 728 F.3d at 1345.   Second, the specification says the digital certificate is generated using "conventional" technology, and thus this alleged advance does not reflect any improvement in computer technology.  '998 patent at 4:4-36 (describing use of "conventional" GPS technology for "local certification"), 5:28-34 (describing use of "conventional technology" to obtain a "Certificate of Authenticity (CA) from a certification authority," where the "certification authority" can "'digitally sign' a file, image, etc. and provide a level of authenticity to that file").

### 4.   *Alice* Step Two: The Claims Lack an Inventive Concept

Claim 1 of the '998 patent contains no "inventive concept" to save it at *Alice* step two. Beyond basic encryption and signing/authentication—each of which is a well-known process— the remaining claim steps merely recite additional well-understood, routine and conventional computer functions: capturing media (3:50-51—"This can be any type of scene or any type of information that is captured"); stamping date, time, and location (4:9-5:06—discussing various known and "conventional" techniques for obtaining date, time, and location information and marking files with that information); and transmitting and receiving the file (10:20-24—"using

any of a number of well-known wireless methods").

None of these steps claim an improvement to computer technology or a specific algorithm; rather, they describe the routine use of conventional computing components to perform the fundamental process of collecting, encrypting, and transmitting digital files. *See Universal*, 10 F.4th at 1353 (finding encryption and authentication claims fail step two because "the combination of these long-standing conventional methods of authentication yields expected results of an additive increase in security" and because "verifying the identity of a user to facilitate a transaction is a fundamental economic practice"). Nor is there any "inventive concept" in the ordered combination of these steps, and MyPort alleges none in its Complaint.

The dependent claims do not add any limitations that merit any analysis or result different from claim 1. Instead, each claim incorporates well-understood, routine and conventional concepts such as associating the file with location information (claims 2 and 3), using symmetrical and asymmetrical encryption (claims 4 and 5) or public and private keys (claim 6), or using a third layer of encryption (claims 7 and 8). *See* '998 patent at 4:09-13 (describing GPS as a "conventional system"), 6:22-25 (describing public key systems as "conventional"), 8:8-38 (describing symmetrical encryption as "a well-known algorithm," describing examples of asymmetrical encryption functions, and describing public and private key systems as "common"). The fact that the specification does not provide relevant support for many of these additional limitations underscores that these limitations are well-understood, routine, and conventional.

Because the claims do not cover any technological advancement over the abstract idea itself, they fail to supply an inventive concept and are therefore ineligible under *Alice* step two.

### C.    MyPort Fails To Plausibly Plead Indirect Infringement of the '998 Patent

MyPort asserts that Apple indirectly infringes the claims of the '998 patent. D.I. 1 ¶¶ 101-03. But both induced and contributory infringement require proof that the defendant knew of the

existence of the asserted patent. *Commil USA*, 575 U.S. at 639; *Global-Tech*, 563 U.S. at 766; *ZapFraud, Inc. v. Barracuda Networks, Inc.*, 528 F. Supp. 3d 247, 249 (D. Del. 2021). MyPort does not—and cannot—plausibly plead that Apple knew of the '998 patent, let alone knew that any third party would infringe the claims. MyPort also does not allege sufficient factual allegations to support a willful blindness theory. *Global-Tech*, 563 U.S. at 766. This Court should thus dismiss MyPort's indirect infringement claims for the '998 patent.[3]

### 1. MyPort Does Not Plead Actual Knowledge of the '998 Patent

MyPort has failed to adequately plead actual knowledge of the '998 patent, which is an essential element of its indirect infringement claims. MyPort relies on a notice letter as its sole basis for Apple's alleged knowledge of any of the asserted patents:

> MyPort sent a letter to Apple on October 13, 2020, identifying MyPort patents, including each of the Patents-in-Suit, or applications pending at the time that led to the Patents-in-Suit, and specifically alleged that 'Apple's iPad, iPad Mini, iPhone, and iPod Touch infringe at least the following claims: '017 patent claims 13-17; '067 patent claims 6-9 and 13-17; and '066 patent claims 13-17' and included claim charts enclosing the same."

D.I. 1 ¶ 36. Although MyPort asserts that the letter mentioned some asserted patents, the letter and MyPort's discussion of it do not mention the '998 patent. This omission is unsurprising because the '998 patent did not issue until more than a year after MyPort sent the letter. *See* '998 patent.

At best, MyPort alleges that it identified the "*application*[] pending at the time that led to the ['998 patent]," D.I. 1 ¶ 36 (emphasis added). However, alleging knowledge of a pending application is legally insufficient to plead the requisite knowledge of a later-issued patent. *See Helios Streaming, LLC v. Vudu, Inc.*, No. 19-1792-CFC-SRF, 2020 WL 2332045, at *3 (D. Del.

---

[3] MyPort does not separately plead counts for indirect infringement, but rather includes allegations of indirect infringement under Count IV of the Complaint, ¶¶ 101–03.

May 11, 2020), report and recommendation adopted, 2020 WL 3167641 (D. Del. June 15, 2020) ("However, the [asserted patent] did not issue until the following year.  Courts have held that '[a] patent application does not provide notice of the resulting patent for indirect . . . infringement.'") (internal citations omitted).  Nor is this a case in which there is additional context from which the Court can infer that Apple knew of the '998 patent or any alleged infringement.  For example, MyPort alleges it provided claim charts to Apple for the other Asserted Patents but makes no such allegations for the '998 patent, and that patent claims different subject matter.  D.I. 1 ¶ 36.  Accordingly, because MyPort failed to adequately plead knowledge of the '998 patent, it fails to state a claim for indirect infringement.

MyPort's only other allegation regarding Apple's supposed knowledge of the '998 patent is the conclusory assertion that "Apple is aware and/or willfully blind that these affirmative acts infringe and/or would induce infringement of the '998 Patent, of which it had knowledge." *Id.* at ¶ 101; *see also id.* at ¶ 102 (alleging same for contributory infringement).  Importantly, MyPort pleads no specific facts in support, so such a "[t]hreadbare recital[]" of the knowledge element is insufficient to state a claim for indirect infringement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Nor can MyPort rely on the filing of the Complaint to satisfy the knowledge requirement.  The '998 patent expired on September 29, 2023, more than a year before the Complaint was filed.  *Compare* D.I. 1-4 ('998 patent) *with* D.I. 1 (Complaint).  Thus, MyPort's indirect infringement claims require pre-suit knowledge, and MyPort pleads no facts that could establish that knowledge.

### 2. MyPort Fails to Adequately Plead Willful Blindness of the '998 Patent

MyPort has also failed to adequately plead willful blindness.  A willfully blind defendant is one who "takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts." *Global-Tech*, 563 U.S. at 769.  Here, the Complaint contains no facts suggesting that Apple subjectively believed there was a high

probability of infringement or that Apple took deliberate steps to avoid learning of it. *See* D.I. 1.

To the extent MyPort relies on the October 13, 2020 letter—which predated the '998 patent's existence—the Complaint merely alleges that the letter "identified" other Patents-in-Suit, not the '998 patent. Moreover, the letter does not allege that Apple infringed the '998 patent, let alone explain how any Apple product might do so. *See Helios Streaming*, 2020 WL 2332045, at *9 (finding willful blindness allegations insufficient where notice letter did not assert or explain any alleged infringement). Willful blindness requires *purposefully avoiding* knowledge of infringement. *See Monec Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 234 (D. Del. 2012). MyPort has not alleged that here.

### D.    The Complaint Fails to Plausibly Plead Willful Infringement

MyPort's failure to sufficiently plead that Apple had any reason to know of the '998 patent is also fatal to its willful infringement claim. *See St. Clair Intell. Prop. Consultants, Inc. v. Hewlett–Packard Co.*, No. 10-425, 2012 WL 1134318, at *2–3 (D. Del. Mar. 28, 2012) (finding willfulness adequately pled where complaint set forth facts demonstrating actual knowledge of patents-in-suit); *see also Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559, 567–68 (D. Del. 2012) (upholding willfulness claim where patentee alleged defendant had pre-suit knowledge of the patents); *Netgear, Inc. v. Ruckus Wireless, Inc.*, 852 F. Supp. 2d 470, 476–77 (D. Del. 2012) (same). Because MyPort's Complaint does not allege facts plausibly suggesting Apple had actual knowledge of the '998 patent, MyPort's willful infringement claim should be dismissed.

## VI.    CONCLUSION

For the foregoing reasons, the Complaint should be dismissed.

Dated: March 21, 2025

FISH & RICHARDSON P.C.

*/s/ Susan E. Morrison*

Susan E. Morrison (#4690)
Nitika Gupta Fiorella (#5898)
222 Delaware Ave., 17th Floor
Wilmington, DE 19801
Telephone: (302) 652-5070
morrison@fr.com; fiorella@fr.com

Roger A. Denning (*pro hac* pending)
Joy Backer Kete (*pro hac* pending)
12860 El Camino Real, Suite 400
San Diego, CA 92130
Telephone: 858-678-5070
denning@fr.com; kete@fr.com

Kathryn Quisenberry (*pro hac* pending)
Jacqueline T. Moran (*pro hac* pending)
909 Fannin Street, Suite 2100
Houston, TX 77010
Telephone: 713-654-5300
quisenberry@fr.com; jtmoran@fr.com

Noah C. Graubart (*pro hac* pending)
1180 Peachtree Street NE, 21st Floor
Atlanta, GA 30309
Telephone: 404-892-5005
graubart@fr.com

Jenna Kuh (*pro hac* pending)
1000 Maine Avenue SW, Suite 1000
Washington, D.C. 20024
Telephone: 202-783-5070
kuh@fr.com

Kyle J. Fleming (*pro hac* pending)
7 Times Square, 20th Floor
New York, NY 10036
Telephone: 212-765-5070
kfleming@fr.com

***Attorneys for Defendant,***
***APPLE INC.***

26