## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **MYPORT TECHNOLOGIES, INC.**<br><br>*Plaintiff,*<br><br>v.<br><br>**APPLE INC.**<br><br>*Defendant.* | **Case No. 1:24-cv-01337-JDW** |

## MEMORANDUM

To get a patent, you have to advance technology. That means more than just describing a new outcome using conventional components. Particularly in computer-based systems or methods, you have to describe a new process, not just a new result. MyPort Technology asserts four patents against Apple Inc., but all of them rely on conventional computer components to achieve an outcome. None of the patents claim a patentable invention. I will therefore grant Apple's Motion To Dismiss the Complaint in this case. However, I will give MyPort a chance to file an amended complaint if there are new facts that it can plead that it believes in good faith would change this outcome.

## I.    LEGAL STANDARD

### A.    Failure To State A Claim

A district court may dismiss a complaint for failure to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). The Federal Circuit applies regional circuit

law to procedural questions that are not themselves substantive patent law issues so long as they do not (a) pertain to patent law; (b) bear an essential relationship to matters committed to the Federal Circuit's exclusive control by statute; or (c) implicate the jurisprudential responsibilities of the Federal Circuit in a field within its exclusive jurisdiction. *See GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1272 (Fed. Cir. 2001). Thus, I apply Third Circuit law with respect to the motion to dismiss. *See Aatrix Software, Inc. v. GreenShades Software, Inc.*, 882 F.3d 1121, 1124 (Fed. Cir. 2018).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). The Third Circuit has a three-step process to determine whether a complaint meets this standard. First, the court must identify the elements needed to state a particular claim. *See id.* at 787. Second, the court should identify conclusory allegations, such as legal conclusions, that are not entitled to the presumption of truth. *See id.* Third, the court should accept as true well-pleaded allegations and "determine whether they plausibly give rise to an entitlement to relief." *See id.* The court must "construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them." *Id.* at 790.

A defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b). In deciding a motion to

dismiss, the court must "draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

### B.    Representativeness

A district court may treat a patent claim as representative of others when the claims are "substantially similar and linked to the same abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014). Claim language is the primary consideration in determining if a claim is representative. *See Cleveland Clinic Foundation v. True Health Diagnostics, LLC*, No. 15-cv-2331, 2016 WL 705244, at *3 (N.D. Ohio Feb. 23, 2016), *aff'd*, 859 F.3d 1352, 1360 (Fed. Cir. 2017). Where a party contests representativeness, patentees bear the burden of making a "meaningful argument for the distinctive significance of any claim limitations not found in the representative claim." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018).

### C.    Patentability

An invention is patent-eligible if it claims a "new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. The Supreme Court, however, has long interpreted Section 101 to contain an implicit exception: "laws of nature, natural phenomena, and abstract ideas" are not patentable. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (quotations omitted). Courts use the two-step *Alice* framework to decide whether a patent is invalid under Section 101. The *Alice* framework first requires a court to determine whether the claims at issue are "directed to" a patent ineligible

concept, such as abstract ideas. *Id.* at 217 (citation omitted). If they are directed to an ineligible concept, the court considers the elements of each claim, "both individually and as an ordered combination," to determine whether the additional elements amount to "significantly" more than just an abstract idea. *Id.* at 217–18 (citation omitted). Patent validity under Section 101 is a question of law suitable for resolution on a motion to dismiss. *See, e.g.*, *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

To determine abstractness under *Alice*'s first step, courts ask "what the patent asserts to be the focus of the claimed advance over the prior art." *TecSec, Inc. v. Adobe, Inc.*, 978 F.3d 1278, 1292 (Fed. Cir. 2020) (citations omitted). Courts "must focus on the language of the [a]sserted [c]laims themselves ... considered in the light of the specification." *Id.* (same). The Federal Circuit has cautioned not to overgeneralize claims by analyzing them at "a high level of abstraction" that is "untethered from the language of the claims," lest "the exceptions to § 101 swallow the rule." *Id.* at 1293 (same). However, "mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea." *WhitServe LLC v. Donuts Inc.*, 390 F. Supp. 3d 571, 578 (D. Del. 2019), *aff'd*, 809 F. App'x 929 (Fed. Cir. 2020); *see also Alice*, 573 U.S. at 223.

After identifying a claim as directed to an abstract idea, a court "must examine the elements of the claim to determine whether it contains an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Genetic*

*Technologies Ltd. v. Merial LLC*, 818 F.3d 1369, 1376 (Fed. Cir. 2016) (citation modified). Whether a claim supplies an inventive concept that renders a claim significantly more than an abstract idea to which it is directed is a question of law, although "subsidiary fact questions" might inform it. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018).

## II. ANALYSIS

### A. Speech And Recognition Patents

U.S. Patent Nos. 9,832,017 ("the '017 Patent"), 10,237,067 ("the '067 Patent"), and No. 10,721,066 ("the '066 Patent") (collectively, the "Speech And Recognition Patents") are part of the same patent family and share the same specification. All three address the ability of the user of a digital device to use audio tags for media files like photos and videos. Apple claims that all three claim unpatentable subject matter.

#### 1. Representativeness

All the claims in the Speech And Image Recognition Patents describe a process with three core steps. First, the system captures inputs—audio through a microphone, images through a camera, and contextual information like time and location. Second, it processes those inputs—converting the audio into text, processing the image into a digital file, and creating searchable text and image tags with additional metadata. Third, it stores the processed data and associated tags in memory for later retrieval and use.

(*Compare* D.I. 1-1 ('017 Patent), 10:28–56 *with* D.I. 1-2 ('067 Patent), 10:40–11:20 *with* D.I. 1-3 ('066 Patent), 10:52–11:32.)

Claim 13 of the '066 Patent is representative of all of these claims. It describes a method of capturing image and audio information that includes internal storage, an interface with a microphone, a camera to capture images, two converters to convert the audio information to text and the photo to an image file, the creation of metadata tags using the image and text recognition, and storing the data. The other independent and dependent claims in the Speech And Image Recognition Patents describe the same basic process, with the same components.

The differences that MyPort identifies among some of the claims do not demonstrate a "distinctive significance of any claim limitations." *Berkheimer*, 881 F.3d at 1365. Claim 10 of the '017 Patent adds the use of a transmitter, receiver, and database. Claim 14 of the same patent limits the image source to an "external image source," and Claim 17 adds elements to the first data converters regarding a "start event" and "stop event" to address video files. But these additional limitations "only tack on generic computer components or introduce conventional computer activities and are all directed to the same abstract idea." *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1291–92 (Fed.

Cir. 2024) (cleaned up). They do not add distinctive limits to render Claim 13 of the '066 Patent unrepresentative.[1]

    **2.**    *Alice*

        **a.**      **Step one—abstract idea**

In the context of software and other computer-related patents, the question is "whether the claims focus on the specific asserted improvement in computer capabilities … or, instead, on a process that qualifies as an abstract idea for which computers are invoked merely as a tool." *Universal Secure Registry LLC*, 10 F.4th at 1357 (citation modified). The alleged improvement must be directed to functionality; "an improved result, without more, is not enough to support patent eligibility at *Alice* step one." *Contour IP Holding LLC v. GoPro, Inc.*, 113 F.4th 1373, 1379 (Fed. Cir. 2024) (citation modified).

Claim 13 of the '066 Patent is directed to indexing and storing digital media with audio-to-text generated tags and metadata. The claim recites converting audio to text, generating image-recognition tags with metadata, associating the text and image tags with the image, and storing the image in association with those tags. This is a modernization of indexing practices used for centuries. *See Intell. Ventures I LLC v. Capital*

---

[1] Apple anticipated in its Motion that MyPort would invoke Claim 6 of the '017 Patent as a distinctive claim. MyPort didn't, though. As the patentee, it was MyPort's burden to demonstrate distinctive claims limits. Because MyPort didn't identify Claim 6 as a basis to satisfy that burden, I won't address any potential distinctions of that claim.

*One*, 792 F.3d 1363, 1369–70 (Fed. Cir. 2015). The only difference is that some of the tags derive from an audio transcription.

The Federal Circuit has held that generating tags, associating data with those tags, and using them for search and retrieval is abstract. *See Intell. Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1326–28 (Fed. Cir. 2017). In that case, the Federal Circuit held that claims directed to using XML tags to organize and retrieve information were abstract because they recited creating, storing, and using an index of tags on generic computer components without improving database technology. *See id.* MyPort argues that unlike the claimed method in *Intellectual Ventures*, its claims focus on improvements in computer functionality because its method saves storage space and prevents loss of tags between device transfers. But those improvements don't appear in the claim language. The claim identifies no file structure, storage architecture, or transfer protocol that yields the asserted storage savings or preserves tags across devices. *See e.g.*, *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017).

MyPort also argues that its claims are not abstract because "humans have never been capable of creating an association between an image and associated audio information" and then maintaining that information during a transfer between devices. (D.I. 23 at 13.) That's not true. A CD or vinyl with a lyric book and record art accomplishes the same task. The use of audio-to-text transcription does not matter because using technology to create content-based identifiers is still an abstract idea. *PersonalWeb Techs*.

*LLC v. Google LLC*, 8 F.4th 1310, 1316 (Fed. Cir. 2021) (holding using an algorithm to generate content-based identifiers abstract).

### b.    Step two—inventive concept

The Federal Circuit has treated scanning, recognizing, converting, tagging, and storing information as well-understood, routine, and conventional computer activity. *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1347–49 (Fed. Cir. 2014); *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613–16 (Fed. Cir. 2016). Commands to "associate" and "store" data in memory also reflect routine functions. *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1317–18 (Fed. Cir. 2021). That's what Claim 13 describes.

Claim 13 recites a camera, a microphone, processors or data converters that capture and convert media, software that performs speech-to-text and image recognition, internal storage that saves an image in association with tags and metadata, and transfer of that image. Further, the claims use general language, like "any device," to describe the components, indicating they are conventional. (D.I. 1-2 at 4:19–21.) Neither Claim 13 nor anything in the specification specifies how those components operate or improve recognition; they call for functional results using generic processors and software. *See Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337–39 (Fed. Cir. 2017). Each item does what one would expect a standard device or routine software to do.

Looking at the claims as an ordered combination doesn't change my view. MyPort contends "the inventive concept of improving technology by unifying the representation of and access to files and data across all a user's devices shines through." (D.I. 23 at 16.) But MyPort never explains how this differs from longstanding indexing and storage practices. MyPort claims storage savings and tag preservation, but neither assertion is anchored in the claim language or specifications. *See Simio, LLC v. FlexSim Software Prods. Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020). Therefore, the claim lacks an inventive concept and is not patent-eligible.

### B.    '998 Patent

#### 1.    Representativeness

Claim 1 of the '998 Patent describes a method of capturing digital information, embedding that information with metadata, encrypting the file, creating and associating a signature, transmitting, and retrieving the file after verifying signatures. Claims 2-8 depend on Claim 1. Each of them adds only conventional variations and do not alter the basic concept of Claim 1. For example, Claims 5 through 8 add another layer of encryption or vary the key-management method, but these are conventional variations of the same process of securing and authenticating data. Although MyPort points out some differences between Claim 1 and its dependent claims, it does not identify any "distinctive significance of any claim limitations not found in the representative claim." *Berkheimer*,

881 F.3d at 1365. It therefore has not carried its burden, and I conclude that Claim 1 fairly represents the asserted claims of the '998 Patent.

        **2.**    *Alice*

        **a.**    **Step one—abstract idea**

Claim 1 of the '998 Patent is directed to the idea of collecting and transmitting encrypted information for secure storage and retrieval. The claim recites steps of capturing digital information, embedding that information with metadata, encrypting the file, creating and associating a signature, transmitting, and securely retrieving the file via verified signatures. ('998 Patent, 16:28–17:12.) "Providing restricted access to resources" is abstract unless it covers a concrete, specific solution. *Universal Secure Registry LLC*, 10 F.4th at 1347 (citation modified); *see Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 F. App'x 1014, 1017 (Fed. Cir. 2017).

I find *Universal* instructive given the factual parallels to this case. In that case, the Federal Circuit held that a claimed method of authenticating a user with an electronic ID for payments was directed to the abstract idea of collecting and examining data to enable authentication. *Universal Secure Registry LLC*, 10 F.4th at 1353. Although the appellant in *Universal* argued its claim was a novel solution that improved computer functionality, the Federal Circuit concluded that the "collection of conventional data combined in a conventional way" was abstract because it achieved expected results. *Id.* at 1352. I see the same with the '998 Patent. MyPort's patent takes digital information, combines it with

conventional data and well-known encryption techniques, and transmits that information for storage and retrieval—an expected result.

MyPort contends that, unlike *Universal*, its claims provide a technological improvement to computer functionality. I disagree. Claim 1 does not provide any tangible technological innovation. There's no new encryption method or authentication algorithm that signals an improvement. MyPort just states the patent is a technological improvement without pointing me to anything in the claims or specifications to support its argument. I don't need to accept that unsupported conclusion, even at this stage of the proceedings. *Connelly*, 809 F.3d at 786.

### b.    Step two—inventive concept

The elements of Claim 1—whether alone or as an ordered combination—add little more than the abstract idea and do not transform the Claim into an inventive concept. *Genetic Technologies Ltd.*, 818 F.3d at 1376. MyPort cannot rescue the '998 Patent by rebranding the same security improvement theory that failed at step one. Saying the claimed workflow provides a new combination that enhances computer and network security repackages the abstract goal that I identified.

MyPort's reliance on *CosmoKey* doesn't persuade me. *CosmoKey Sols. GmbH & Co. KG v. Duo Sec. LLC*, 15 F.4th 1091, 1098 (Fed. Cir. 2021). In *CosmoKey*, the specification and claims recited a concrete authentication sequence that departed from earlier approaches—the simplification of the authentication process and heightened security

with mobile devices. *Id.* at 1094. There's nothing like that here. MyPort concludes that the claim discloses an inventive combination but again provides no explanation of why it's inventive. For example, the specification does not explain how the claimed method addresses the problem of unsecure data, there is no specific encryption or authentication algorithm in the claims, and the specification itself describes the claimed steps as conventional. *See e.g.*, '998 patent at 3:50–51, 4:9–5:6, 5:28–34 6:23–25, 8:08–11, 8:22–24, 10:20–24. Therefore, MyPort hasn't alleged any inventive concept that makes the patent eligible.

### C.    Leave To Amend

It's not clear to me that MyPort could add facts via an amended complaint that would change this outcome. But I can't say that for sure until I see what it would plead, and the Federal Circuit has noted that amendments can add factual detail that might save a seemingly unpatentable claim. *See Aatrix Software*, 882 F.3d at 1126. So, if MyPort has more to say that might bear on my patentability determination, I'll give it a chance to file a motion for leave to file an amended pleading attaching any proposed amended complaint. But it shouldn't do so just to keep claims alive that otherwise can't survive.

### III.    CONCLUSION

MyPort's claims under '017, '067, '066, and '998 Patents are not valid. I will therefore grant Apple's motion to dismiss. Because it is possible that MyPort could add factual

allegations that bear on patent eligibility, I will permit it to file an amended complaint.[2]

An appropriate Order follows.

BY THE COURT:

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

September 23, 2025

---

[2] Because I find that the Claims are not patent-eligible, I decline to address the Parties' arguments on indirect or willful infringement.