**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| MYPORT TECHNOLOGIES, INC. | |
| Plaintiff, | |
| v. | C.A. No. 24-1337-JDW |
| APPLE INC. | |
| Defendant. | |

**DEFENDANT APPLE INC.'S OPPOSITION**
**TO PLAINTIFF MYPORT TECHNOLOGIES, INC.'S**
**MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ...................................................................................................1

II.    NATURE AND STAGE OF THE PROCEEDINGS ...........................................1

III.   STATEMENT OF FACTS ...................................................................................2

      A.    Overview of the Asserted Patents ............................................................2

      B.    This Court's Prior Finding of Lack of Subject Matter Eligibility .........3

      C.    The New Material Included in MyPort's Proposed FAC ........................5

IV.   SUMMARY OF THE ARGUMENT .................................................................5

V.    LEGAL STANDARDS ........................................................................................7

VI.   ARGUMENT ........................................................................................................8

      A.    MyPort's Motion for Leave Should Be Denied as Futile ......................8

            1.    The New Allegations Citing the Claims and Specification Repeat
                   Arguments that this Court Already Rejected ...............................9

            2.    The EDTX Expert Report Repeats the Same MyPort Allegations
                   Previously Rejected by this Court .............................................14

            3.    The EDTX Summary Judgment Order Did Not Find that the
                   Asserted Claims Cover Patentable Subject Matter ...................18

            4.    MyPort's References to Apple and Third-Party Patent Filings Are
                   Irrelevant to Patent Eligibility .................................................18

      B.    This Court Should Dismiss the '998 Patent with Prejudice .................20

VII.  CONCLUSION ..................................................................................................20

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
　882 F.3d 1121 (Fed. Cir. 2018).......................................................................................8, 13

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
　573 U.S. 208 (2014) ...........................................................................................*passim*

*Bial-Portela v. Alkem Labs. Ltd.*,
　No. 18-304-CFC-CJB, 2022 U.S. Dist. LEXIS 193028 (D. Del. Oct. 24, 2022) ..................20

*Cascades Branding Innovation LLC v. Aldi Inc.*,
　No. 2024-1729, 2025 WL 2731321 (Fed. Cir. Sep. 25, 2025) ........................................16, 17

*Connelly v. Lane Const. Corp.*,
　809 F.3d 780 (3d Cir. 2016) ...........................................................................................7, 17

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
　776 F.3d 1343 (Fed. Cir. 2014)........................................................................................4

*Data Scape Limited v. Western Digital Corp.*,
　816 Fed. Appx. 461 (Fed. Cir. 2020) ...............................................................................19

*Dish Technologies L.L.C. v. FuboTV Media Inc.*,
　No. 23-986-GBW, D.I. 38 (D. Del. May 21, 2024) ............................................................14

*Exeltis USA, Inc. v. Lupin Ltd.*,
　No. 22-434-RGA, 2024 U.S. Dist. LEXIS 196789 (D. Del. Oct. 29, 2024) ........................20

*Foman v. Davis*,
　371 U.S. 178 (1962) .........................................................................................................20

*Genetic Techs. Ltd. v. Merial LLC*,
　818 F.3d 1369 (Fed. Cir. 2016)........................................................................................8

*Intellectual Ventures I LLC v. Erie Indem. Co.*,
　850 F.3d 1315 (Fed. Cir. 2017)......................................................................................3, 4

*Location Based Services, LLC v. Google*,
　No. 18-1587, 2019 WL 2904670 (D. Del. July 5, 2019).....................................................17

*Marble Voip Partners LLC v. Zoom Video Commc'ns., Inc.*,
　670 F. Supp. 3d 1213 (D. Kan. 2023) ..............................................................................14

*Mobile Acuity Ltd. v. Blippar Ltd.*,
   110 F.4th 1280 (Fed. Cir. 2024)..................................................................................8

*Move Inc. v. Real Estate Alliance Ltd.*,
   721 Fed. App'x 950 (Fed. Cir. 2018) ........................................................................6

*Natera, Inc. v. ArcherDX, Inc.*,
   No. 20-518, 2020 WL 6043929 (D. Del. Oct. 13, 2020)........................................16

*Novartis Pharms. Corp. v. Accord Healthcare Inc.*,
   2019 WL 2502535 (D. Del. June 17, 2019)..............................................................7

*PersonalWeb Techs. LLC v. Google LLC*,
   8 F.4th 1310 (Fed. Cir. 2021) ...................................................................................4

*Redwood Technologies, LLC v. Netgear, Inc.*,
   2024 WL 4591852 (D. Del. 2024) ...........................................................................16

*Rose v. Bartle*,
   871 F.2d 331 (3d Cir. 1989) ....................................................................................15

*Sanderling Management Ltd. v. Snap Inc.*,
   65 F.4th 698 (Fed. Cir. 2023) ...................................................................................5

*Securenet Solutions Group, LLC v. Arrow Elecs., Inc.*,
   No. 22-cv-01254, 2023 WL 3821214 (D. Col. June 5, 2023) .................................15

*Shure Inc. v. Clearone, Inc.*,
   No. 19-1343-RGA, 2022 U.S. Dist. LEXIS 95425 (D. Del. May 27, 2022) ........20

*Simio, LLC v. FlexSim Software Products Inc.*,
   983 F.3d 1353 (Fed. Cir. 2020).................................................................................12

*TecSec, Inc. v. Adobe, Inc.*,
   978 F.3d 1278 (Fed. Cir. 2020).................................................................................8

*In re TLI Commc'ns LLC Patent Litig.*,
   823 F.3d 607 (Fed. Cir. 2016)...................................................................................4

*Trinity Info Media, LLC v. Covalent, Inc.*,
   72 F.4th 1355 (Fed. Cir. 2023) ...............................................................................14

*WhitServe LLC v. Donuts Inc.*,
   390 F. Supp. 3d 571 (D. Del. 2019), *aff'd*, 809 F. App'x 929 (Fed. Cir. 2020).....................8

*Yu v. Apple Inc.*,
   1 F.4th 1040 (Fed. Cir. 2021) .................................................................................15

**Statutes**

35 U.S.C. § 101 ................................................................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 12, 15

MPEP § 2001.04 .................................................................................................................. 19

## I.     __INTRODUCTION__

This Court correctly dismissed the original Complaint because the claims of MyPort's patents are directed to ineligible subject matter.  The patents are "a modernization of indexing practices used for centuries," (D.I. 37 at 7), and accomplish the claimed process using "generic processors and software," (*id.* at 9).  These are not the novel, nonobvious inventions Congress intended to protect.

MyPort's proposed First Amended Complaint does not, and cannot, provide a cure.  Instead, the proposed pleading adds a litany of allegations that repeat what this Court already considered and rejected.  These allegations are no more persuasive the second time, even when presented in the form of conclusory expert opinions.  This Court has already performed a thorough assessment of the specification and claims, which resulted in a well-reasoned finding of patent ineligibility.  None of the allegations in MyPort's First Amended Complaint warrants disturbing it.  Because MyPort's proposed amendment would be futile, Apple respectfully requests that the Court deny MyPort's motion for leave and dismiss this case with prejudice.

## II.    __NATURE AND STAGE OF THE PROCEEDINGS__

MyPort filed its original Complaint (the "Complaint") against Apple on December 6, 2024, alleging infringement of four patents, U.S. Patent Nos. 9,832,017 (the "'017 patent"), 10,237,067 (the "'067 patent"), 10,721,066 (the "'066 patent"), and 11,188,998 (the "'998 patent").  D.I. 1. On March 21, 2025, Apple moved to dismiss the Complaint for failure to state a claim, arguing that the asserted patent claims are directed to patent-ineligible subject matter under 35 U.S.C. § 101 because they claim nothing more than abstract ideas implemented using generic computer components.  D.I. 19, 20.

The Court granted Apple's motion to dismiss on September 23, 2025, finding that MyPort's patents "rely on conventional computer components to achieve an outcome" and that "[n]one of

the patents claim a patentable invention." D.I. 37 at 1. The Court allowed MyPort the limited opportunity to "seek leave" to amend "if there are new facts that it can plead that it believes in good faith would change this outcome," while cautioning that MyPort "shouldn't do so just to keep claims alive that can't otherwise survive." *Id.* at 13.

On October 31, 2025,[1] MyPort filed the present motion for leave to amend, attaching its proposed First Amended Complaint ("FAC"). The FAC no longer alleges infringement of the now-expired '998 patent. For the remaining three patents—the '066, '017, and '067 patents (the "Asserted Patents")—MyPort purports to provide "supplemental factual allegations and evidence . . . [to] address the perceived deficiencies in MyPort's patent-related claims." D.I. 41 at 2. As explained below, the material that MyPort has added to the FAC cannot save its patents from this Court's finding of subject matter ineligibility.

## III. STATEMENT OF FACTS

### A. Overview of the Asserted Patents

The Asserted Patents were referred to in the prior briefing as "The Speech and Image Recognition Patents." They are part of the same patent family and share a common specification.

The Asserted Patents identify a problem with the "ability to store virtually unlimited numbers of media files" on a device. '066 patent at 2:53–60.[2] For example, the patents describe the difficulties with indexing and transferring large numbers of media files and problems with the recipient locating a particular file when media files are sent to another user. *Id.* at 2:53–3:15. The claims purport to solve this problem by collecting, converting, tagging, and storing the data. The

---

[1] MyPort filed its motion for leave at 8:22 p.m. ET on October 30, 2025, which, under this District's August 2022 Standing Order, is deemed filed on October 31, 2025. Counsel for MyPort agreed via email that the filing was effective October 31, 2025.

[2] Each '066 patent specification citation is also found in the '017 patent and '067 patent.

patents teach that this abstract process is performed using conventional computer components, such as "a camera, a microphone, processors or data converters that capture and convert media, software that performs speech-to-text and image recognition, internal storage that saves an image in association with tags and metadata, and transfer of that image." D.I. 37 at 9.

### B.    This Court's Prior Finding of Lack of Subject Matter Eligibility

In its September 23, 2025 Memorandum Opinion (D.I. 37) granting Apple's Motion to Dismiss (D.I. 19), this Court found that each of MyPort's then-asserted patents "rel[ies] on conventional computer components to achieve an outcome," such that "none of the patents claim a patentable invention." D.I. 37 at 1. The Court therefore dismissed MyPort's Complaint in its entirety, allowing MyPort the opportunity to seek leave to amend only if it could, "in good faith," allege new facts that would change that result. *Id.* at 1, 13.

This Court's opinion first addressed the Speech and Image Recognition Patents, which are now the only patents asserted. The Court found that claim 13 of the '066 patent is representative because all of the asserted claims "describe a process with three core steps" relating to speech and image recognition and there are no material differences distinguishing claim 13 from the other asserted claims. D.I. 37 at 5–6. Accordingly, this Court used claim 13 for purposes of its analysis. *Id.* at 6.

The Court next addressed *Alice* Step 1, which asks whether the asserted claims are directed to an abstract idea. The Court held that the Asserted Patents are directed to the abstract idea of indexing and storing digital media using conventional tagging techniques, which it described as "modernization of indexing practices used for centuries." *Id.* at 7. This finding was based on ample Federal Circuit precedent holding abstract similar patented processes—i.e., processes for "generating tags, associating data with those tags, and using them for search and retrieval is abstract." D.I. 37 at 8 (citing *Intellectual Ventures I*, 850 F.3d at 1326–28). The Court rejected

MyPort's argument that the patents improve computer functionality, explaining that the alleged improvements "***don't appear in the claim language***."  *Id.*[3]

At *Alice* Step 2, the Court concluded that the claim elements, individually or in combination, do not supply "significantly more" than the abstract idea itself.  D.I. 37 at 4, 9.  The Court explained that "the Federal Circuit has treated scanning, recognizing, converting, tagging, and storing information as ***well-understood, routine, and conventional computer activity***."  D.I. 37 at 9 (citing *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1347–49 (Fed. Cir. 2014); *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613–16 (Fed. Cir. 2016)).  Commands merely to "associate" and "store" data in memory, the Court observed, are likewise routine functions long performed by ordinary computers—"and that's what Claim 13 describes."  *Id.* (citing *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1317–18 (Fed. Cir. 2021)).

After extensive analysis, nothing in the claims or specification persuaded the Court that the patents recite an inventive concept.  The Court observed that the "claims use general language, like 'any device,' to describe the components" and neither the claims nor specification "specifies how those components operate or improve recognition."  D.I. 37 at 9.  Instead, the claims call for "functional results using generic processors and software" to "do[] what one would expect a standard device or routine software to do."  *Id.*  The Court again rejected MyPort's argument that the ordered combination "improv[es] technology" because it was not "***anchored in the claim language or specifications***."  *Id.* at 10.

---

[3] All emphasis added unless otherwise noted.

### C.    The New Material Included in MyPort's Proposed FAC

MyPort asserts that it has added "supplemental factual allegations and evidence" that purportedly cure the deficiencies identified by the Court.  D.I. 41 at 2.  The additions to the FAC are limited to Paragraphs 24 through 32, along with Exhibits D and E.  D.I. 41-02 (FAC Redline).  The new material falls into four categories.  First, the FAC adds allegations regarding the components recited by the Asserted Patents' claims, the purported operation of those components as described by the specification, and how those components relate to purportedly inventive technical solutions.  *See* FAC ¶¶ 25–30.  Second, the FAC adds allegations regarding an expert report from another matter in which the expert repeats MyPort's allegations that the ordered combination of components in the claims are inventive.  *See* FAC ¶ 24.  Third, the FAC adds allegations regarding a two-sentence order from a different court finding that the Asserted Patents are directed to an abstract idea but that "there were outstanding fact issues under Step 2 of *Alice*." *See* FAC ¶ 24, Ex. D.  Finally, the FAC adds allegations regarding Apple and others' citations to the Asserted Patents and patent applications filed relating to purportedly similar technology.  *See, e.g.*, FAC ¶ 31–32.

## IV.    <u>SUMMARY OF THE ARGUMENT</u>

1.    This Court should deny MyPort's motion for leave to amend as futile.  None of MyPort's additions cure the fundamental flaws that this Court previously identified in the Asserted Patents.  Nor could they: "No amendment to a complaint can alter what a patent itself states." *Sanderling Management Ltd. v. Snap Inc.*, 65 F.4th 698, 706 (Fed. Cir. 2023) (affirming district court's finding that proposed amendment would have been futile).  Here, as this Court already held, the Asserted Patents claim unpatentable subject matter, and none of MyPort's amendments support a contrary conclusion.

2.    Tellingly, MyPort does not dispute that the required analysis here is limited. MyPort challenges only this Court's prior analysis regarding *Alice* Step 2, thus conceding that the Asserted Patents' claims are directed to an abstract idea in *Alice* Step 1.

3.    As to *Alice* Step 2, MyPort merely rehashes the same arguments it made in opposition to Apple's motion to dismiss regarding the supposedly inventive combination of components recited in claim 13—arguments this Court already rejected.  While MyPort now relies on an expert report from another case (*MyPort v. Samsung*) to advance these same arguments, that does not save the claims.  After all, a legally and factually unsupported argument does not become proper simply because an expert espouses it instead of the lawyers.  *See, e.g.*, *Move Inc. v. Real Estate Alliance Ltd.*, 721 Fed. App'x 950, 957 (Fed. Cir. 2018) (finding that the "bald assertion[s]" in an "expert's conclusory declaration" did "not satisfy the inventive concept requirement").  MyPort's reliance on the district court's two-sentence summary judgment order from the *Samsung* case is similarly misplaced.  There, the Eastern District of Texas court denied summary judgment under Section 101 because it concluded factual disputes remained under *Alice* step 2, but it gave no rationale for its decision.  That court's finding is not binding on this Court and does not undermine any of this Court's conclusions on patentability.  Finally, MyPort's argument that unrelated patents and applications filed by Apple and other third parties somehow render MyPort's patent inventive has no legal basis.

4.    This Court conducted a thorough analysis of the relevant claim language and related specification and, based on that, determined that the Asserted Patents are patent ineligible.  None of the additions to the FAC can change the content of those patents and, as a result, they remain patent ineligible.  This Court should thus deny MyPort's motion for leave to amend the complaint as futile.

5.    Separately, this Court should dismiss MyPort's infringement allegations for the '998 patent with prejudice, as MyPort's proposed FAC does not allege infringement of that patent.

## V.    LEGAL STANDARDS

**Motion for Leave to Amend.**  A motion for leave to amend a complaint is futile when "the complaint, as amended, does not state a claim upon which relief can be granted." *Novartis Pharms. Corp. v. Accord Healthcare Inc.*, 2019 WL 2502535, at *5 n.7 (D. Del. June 17, 2019). As such, this Court can reject MyPort's motion for leave if the proposed FAC does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016).

"The Third Circuit has a three-step process to determine whether a complaint meets this standard.  First, the court must identify the elements needed to state a particular claim.  Second, the court should identify conclusory allegations, such as legal conclusions, that are not entitled to the presumption of truth.  Third, the court should accept as true well-pleaded allegations and determine whether they plausibly give rise to an entitlement to relief.  The court must construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them."  D.I. 37 at 2 (citations and quotations omitted).

**Patent eligibility.**  Where, like here, the asserted patents are challenged as being directed to patent ineligible subject matter, courts apply *Alice*'s two-step framework to determine eligibility:  First, whether the claims are "directed to" a patent-ineligible concept such as an abstract idea; and second, whether the claim elements, individually or as an ordered combination, contain an "inventive concept" that transforms the abstract idea into a patent-eligible application. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217–18 (2014).  Step one examines "what the patent asserts to be the focus of the claimed advance over the prior art," focusing on the claim language in light of the specification and avoiding overgeneralization "untethered from the

language of the claims." *TecSec, Inc. v. Adobe, Inc.*, 978 F.3d 1278, 1292–93 (Fed. Cir. 2020) (internal citation omitted). Yet "mere recitation of concrete, tangible components" does not confer eligibility on an otherwise abstract idea. *WhitServe LLC v. Donuts Inc.*, 390 F. Supp. 3d 571, 578 (D. Del. 2019), *aff'd*, 809 F. App'x 929 (Fed. Cir. 2020). If the claims are abstract, <u>step two</u> examines whether the claims add "significantly more" by identifying a genuine inventive concept—an inquiry that is ultimately a question of law suitable for resolution at the pleading stage. *Genetic Techs. Ltd. v. Merial LLC*, 818 F.3d 1369, 1376 (Fed. Cir. 2016) (internal citation omitted); *see also Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018).

## VI.    ARGUMENT

### A.    MyPort's Motion for Leave Should Be Denied as Futile

This Court should deny MyPort's motion for leave to amend the complaint because the FAC does not cure the deficiencies of its original complaint. It is undisputed that the Court's inquiry here is a narrow one: It need only analyze whether claim 13 of the '066 patent meets Step 2 of the *Alice* framework.[4] The Court previously concluded that claim 13 of the '066 is representative of the challenged claims, and that claim 13 is directed to an abstract idea. D.I. 37 at 6, 7. MyPort does not dispute either of these conclusions in its motion for leave. *See* D.I. 41 at 2 (limiting its motion to "address[ing] the perceived deficiencies in MyPort's patent-related claims

---

[4] MyPort's new focus on claim 6 of the '017 patent does not change the analysis. This Court already found that claim 13 of the '066 patent is representative of all asserted claims and that any "additional limitations 'only tack on generic computer components or introduce conventional computer activities and are all directed to the same abstract idea.'" D.I. 37 at 6–7 (quoting *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1291–92 (Fed. Cir. 2024)). In any event, like the other claims of the Asserted Patents, claim 6 of the '017 patent describes the same basic process as representative claim 13 of the '066 patent, and adds only conventional components. D.I. 37 at 6–7.

raised in the Court's Memorandum and Order"), 5 (MyPort arguing only that its supplemental allegations "present a factual issue under *Alice* Step Two").  The Court need only determine whether MyPort's supplemental allegations are sufficient to disturb this Court's conclusion that that claim 13 fails to recite an inventive concept under *Alice* Step 2.  They are not.

The additions to MyPort's FAC do not save its unpatentable claims under *Alice* Step 2. The crux of the *Alice* Step 2 inquiry requires examining "the elements ***of the claim*** to determine whether it contains an inventive concept." *Alice*, 573 U.S. at 221.  Yet most of what MyPort added to the FAC relies on extrinsic evidence, and even the allegations focused on the intrinsic record merely rehash arguments this Court has already considered and rejected.  The Court should thus deny MyPort's motion for leave to amend the complaint as futile.

        **1.**        **The New Allegations Citing the Claims and Specification Repeat Arguments that this Court Already Rejected**

MyPort's allegations regarding the inventiveness of components and functionalities recited by the claims simply repeat the arguments that this Court already addressed and rejected.  *See* D.I. 37 at 9–10.  Specifically, Paragraphs 27 through 29 of the FAC describe a variety of "specific components and ordered steps that" it alleges "constitute an inventive concept and . . . not merely a well-understood, routine or conventional computer implementation."  D.I. 41 at 4–5.  Those components are: the first data converter; the media/second data converter; the combiner; and the receiver.  *See* FAC ¶¶ 27–29.  These components ***are identical*** to the ones MyPort cited in its April 11, 2025 Opposition to Apple's Motion to Dismiss (as shown in the table below).  *See* D.I. 23. And just as it is doing now, MyPort argued there that those components are "not generic structures or otherwise well-understood, conventional, or routine."  D.I. 23 at 15.

| Component | First Amended Complaint | MyPort's Opposition to Apple's MTD |
|---|---|---|
| First Data Converter | "the first data converter processes and stores the audio and image data" FAC ¶ 27. | "Apple ignores that the first data converter processes the data in accordance with the remaining limitations of the claims. For example, the first data converter captures the external audio information and processes and stores the captured external audio information in a digital audio format for the combiner to generate an association. . . ." D.I. 23 at 15. |
| Media/Second Data Converter | "while a 'media data converter' processes the audio and image to generate a 'text based searchable file as a text context tag' and an 'image recognition searchable context tag' characterizing the content." FAC ¶ 27. | ". . . and for the media/second data converter to convert to a text context tag. This is not well-understood, conventional, or routine." D.I. 23 at 15. |
| Combiner | The claims also recite a "combiner" (data combiner and compressor) that creates a composite data set." FAC ¶ 27. | "Apple over-simplifies this claimed combiner, which generates an association between the stored digital audio (captured by the first data converter) and the stored digital image (captured by the camera), where the digital audio is the same audio that the media/second data converter uses for the conversion to a text context tag." D.I. 23 at 15. |
| Receiver | "a remote system/receiver and system data converter that converts the received defined set into a searchable format and produces searchable text and image context tags which are associated with the image and stored in a database." FAC ¶ 27. | "Finally, Apple ignores that the received set of captured information that the claimed media/second data converter converts is the information captured by the camera and the first data converter and stored as the digital image and audio, respectively, where the combiner generates an association between the digital image and audio." D.I. 23 at 15. |

For each of these components that MyPort identified, the Court considered and rejected

MyPort's argument that—individually or in ordered combination—they supply an inventive

concept. D.I. 37 at 9–10. Specifically, the Court found that "each item does what one would

expect a standard device or routine software to do," (D.I. 37 at 9), and that the ordered combination did not "differ[] from longstanding indexing and storage practices," (*id.* at 10).

Moreover, the specification confirms that these components implement nothing more than well-known algorithms. With respect to the data converters, it explains that "the data converter 102 can be any type of data capture information," ('066 patent at 4:15–16), and, in describing the combiner, identifies "the well-known ZIP compression algorithm" as an example of a "combine and compress function," (*id.* at 4:61–66). Likewise, the patents do not disclose any particular means of transmitting or receiving data, instead implying that any conventional, well-known methods may be used. Allowing MyPort to amend based on these additions to the FAC would be futile in light of this Court's prior decision.

Additionally, MyPort's new allegations are directly contradicted by the patents' specification, which expressly describes these components and functions as well-known. For instance, the FAC alleges "the use of steganographic embedding of metadata," (FAC ¶ 28), but the specification allows for use of "any one of several ***well-known*** steganographic techniques," ('066 patent at 4:39–40). Similarly, where the FAC claims "the specification ***teaches*** (i) combining multiple data sources . . . into a single composite data stream," (FAC ¶ 28), the specification reveals that the capture device "creates a composite data set using one of a number of ***well-known*** algorithms for combining multiple data sets into a single data set," ('066 patent at 4:58–61). *See also* '066 patent at 4:61 ("well-known ZIP compression algorithm), 5:2 ("well-known encryption algorithms"), 6:5–6 (noting any unspecified "speech-to-text algorithm" may be used), 6:63–64 ("***any*** type of video capture element for capturing an image"), 7:8–9 ("***any*** other type of digital format could be utilized"). This contradiction underscores the futility of MyPort's proposed amendments: the patents themselves acknowledge that they employ "any type" of conventional

components and rely on well-known algorithms, foreclosing any argument that the claimed elements are inventive.

The Federal Circuit's decision in *Simio, LLC v. FlexSim Software Products Inc.*, 983 F.3d 1353 (Fed. Cir. 2020), is instructive here. The patentee in *Simio* sought to amend its complaint to add new allegations describing the supposed improved functionality of an executable process that used graphics instead of programming to create object-oriented simulations. *Id.* at 1365. The Federal Circuit held that "[a] statement that a feature 'improves the functioning and operations of the computer' is, by itself, conclusory," and emphasized that courts "disregard conclusory statements when evaluating a complaint under Rule 12(b)(6)." *Id.* The court further explained that Simio's new allegations "just repackage assertions of non-abstractness we've already rejected as a matter of law." *Id.* The same is true here. MyPort's FAC merely reasserts that the claimed "data converters," "combiner," and other generic components improve storage and preservation during file transfers—assertions this Court has already found unsupported by the claim language. As in *Simio*, those allegations are conclusory and do not raise any factual issue requiring further development; they simply restate, in slightly new phrasing, arguments this Court has already rejected as a matter of law.

Although MyPort now points to limitations appearing in other claims—such as the "bounded capture" start/stop event referenced in FAC ¶ 29—those allegations do not alter the analysis. This Court reviewed numerous claims across the Asserted Patents before concluding that claim 13 of the '066 patent is representative of all asserted claims because each recites the same three-step process and differs only by adding conventional computer components. D.I. 37 at 5–6. MyPort's Motion for Leave does not challenge that representativeness finding, and the Court therefore need not revisit ancillary limitations that appear only outside the representative claim.

In any event, the additional limitations MyPort identifies recite purely conventional activity. For example, a "start event" or "stop event" reflects nothing more than ordinary triggering conditions implemented with standard components, not any unconventional structure or inventive technological improvement, as this Court found in its September 23, 2025 Memorandum Opinion. D.I. 37 at 6 ("Claim 17 adds elements to the first data converters regarding a "start event" and "stop event" to address video files. But these additional limitations "only tack on generic computer components or introduce conventional computer activities and are all directed to the same abstract idea.").

This case is distinguishable from those MyPort cites in which the new allegations in an amended complaint raised factual issues on inventiveness. For example, MyPort relies (at 3) on *Aatrix Software, Inc. v. Green Shades Software, Inc.*, but the proposed amended complaint in that case raised factual disputes tied directly to claim construction, including whether the term "data file" described an inventive component that improved the importation of data from third-party software. 882 F.3d 1121, 1126–27 (Fed. Cir. 2018). The Federal Circuit held that those allegations created a genuine factual issue because the complaint identified a particular claim term whose construction could alter the Section 101 analysis and alleged tangible technological improvements, including reduced "thrashing" in the processing of tax forms. *Id.* at 1127–28.

No such dispute exists here. MyPort's FAC identifies no claim term that it alleges would require construction and no factual allegations relating to an inventive concept that was not already addressed by this Court. *Cf. id.* at 1128 (holding that "[t]here are concrete allegations in the second amended complaint that individual elements and the claimed combination are not well-understood, routine, or conventional activity," and "concrete allegations regarding the claimed combination's improvement to the functioning of the computer"). MyPort should not be allowed to raise a term

for construction in its Reply and, even if it does, that does not preclude this Court from rejecting its Motion for Leave to Amend. "A patentee must do more than invoke a generic need for claim construction or discovery to avoid grant of a motion to dismiss under § 101. Instead, the patentee must propose a specific claim construction or identify specific facts that need development and explain why those circumstances must be resolved before the scope of the claims can be understood for § 101 purposes." *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1360–61 (Fed. Cir. 2023) (proceeding to analyze Section 101 where patentee did not propose any claim construction or facts that need resolution).

MyPort's fleeting reliance on *Dish Technologies L.L.C. v. FuboTV Media Inc*., fares no better because there the plaintiff amended its complaint **before** the Court ruled on the defendant's motion to dismiss. No. 23-986-GBW, D.I. 38 (D. Del. May 21, 2024). The district court's statement that the "amendment is not futile because Dish's proposed First Amended Complaint adequately alleges that the asserted claims contain an inventive concept" simply reflected its finding that the asserted patents themselves plausibly recited an inventive concept—not that ***additional*** factual allegations ***saved*** otherwise ineligible claims. *Id.* at 9. Here, this Court has already concluded that the claims contain no inventive concept, so MyPort's failure to put forth additional allegations that change that analysis renders its amendment futile.

### 2.    The EDTX Expert Report Repeats the Same MyPort Allegations Previously Rejected by this Court

MyPort's reliance on excerpts of an expert report from the *MyPort v. Samsung* does not warrant a reversal of this Court's prior patent ineligibility determination. D.I. 41 at 3–4. As an initial matter, courts in similar situations have disregarded expert declarations that were attached to a complaint, finding that they are not "written instruments" within the meaning of Rule 10(c). *See Marble Voip Partners LLC v. Zoom Video Commc'ns., Inc.*, 670 F. Supp. 3d 1213, 1221 (D.

Kan. 2023) (citing *Rose v. Bartle*, 871 F.2d 331, 339 n.3 (3d Cir. 1989)) ("[T]he fact that Marble is defending against a § 101 invalidity challenge does not necessarily mean that it is authorized to introduce expert declarations at the Rule 12(b)(6) stage."); *see also Securenet Solutions Group, LLC v. Arrow Elecs., Inc.*, No. 22-cv-01254, 2023 WL 3821214 at *10 (D. Col. June 5, 2023) ("disregard[ing] in full" an expert declaration because it is not "the sort of material a court would be permitted to consider when ruling on a Rule 12(b)(6) motion to dismiss").  Moreover, the Federal Circuit has made clear that "patent eligibility can be determined at the Rule 12(b)(6) stage without the aid of expert testimony."  *Yu v. Apple Inc.*, 1 F.4th 1040, 1046 (Fed. Cir. 2021).

Even if the Court does consider the expert report from the *Samsung* matter, the portions MyPort focuses on are conclusory and repetitive of the same MyPort arguments that the Court rejected (discussed above).  First, the cited portions do not introduce new factual allegations; they merely restate descriptions already argued by MyPort and found in the patents' specification.  An exemplary paragraph from MyPort's expert is below.

> 623.  The Asserted Patents are inventive because of how the claimed combination of elements work together to solve the problem in at least the way that digital audio and image/video files are transmitted, indexed, stored, and retrieved while using less storage space (*see*, paragraph 591 above) to address problems in the existing technologies. For example, the specification describes the problem with the "ability to virtually unlimited number of media files," including the "impossibility to manually describe and index every media file in one's possession" and that as a result, many are not organized, or poorly done so on devices. ('017 patent at 2:21-38.)

D.I. 41-03 ¶ 623.  The first sentence restates the same argument that MyPort previously made to this Court and that this Court rejected.  *See, e.g.*, D.I. 37 at 9–10 (rejecting the argument that

transmitting, indexing, storing, and retrieving data is sufficient to overcome *Alice* Step 2). The second sentence quotes the specification, which this Court already considered and found insufficient to sustain patentability. Neither presents new matter. *See Redwood Technologies, LLC v. Netgear, Inc.*, 2024 WL 4591852, at *12 (D. Del. 2024) ("Thus, while plausible factual allegations of an inventive concept can defeat a motion to dismiss, a plaintiff cannot defeat a motion to dismiss merely by including conclusory allegations of inventiveness.") (internal citations and quotations omitted).

The Federal Circuit's decision affirming a futility finding in *Cascades Branding Innovation LLC v. Aldi Inc*. is instructive. No. 2024-1729, 2025 WL 2731321 (Fed. Cir. Sep. 25, 2025). There, after the district court dismissed Cascades's complaint under Section 101, Cascades argued that "the legal question of eligibility is steeped in fact determinations" and that it could cure the defects by "submitting additional expert declarations to show that the components were not conventional or well-understood." *Id.* at *4. The Federal Circuit rejected that argument and agreed with the district court that "the conventionality of the various components was well-established by the specification itself and no amendment to the pleadings could plausibly allege otherwise," noting that the claimed components "were indisputably conventional as of 2007." *Id.* The same is true here. As this Court has already found, the patents' shared specification establishes that each claimed component is well-known, routine, and conventional. *See supra* Section VI.A.1; *see also Natera, Inc. v. ArcherDX, Inc.*, No. 20-518, 2020 WL 6043929 at *8 (D. Del. Oct. 13, 2020) ("When there is a conflict between the materials prepared for litigation, including complaints and expert report[s], and the intrinsic evidence of the patent itself, the Court must resolve that conflict in favor of the patent itself and is not obligated to credit the plaintiff's contradictory allegation…. Additionally, many of the factual allegations on which plaintiff relies are merely conclusory and

do not need to be credited for this reason as well."); *Location Based Services, LLC v. Google*, No. 18-1587, 2019 WL 2904670 at *7 (D. Del. July 5, 2019) (declining to consider an expert declaration to cure a proposed amended complaint as "entirely unhelpful" and "wholly conclusory"). Accordingly, as in *Cascades*, "[n]o amount of new allegations or additional evidence could change that reality or the patent's specification." 2025 WL 2731321, at *4.

Further, the Court also already rejected MyPort's attempts to rely on unclaimed functionality to cure the claim's deficiencies. *See* D.I. 37 at 8. As this Court recognized, MyPort previously argued that its claims focus on improvements to computer functionality "because its method saves storage space and prevents loss of tags between device transfers." *Id.* This Court concluded, however, that "those improvements don't appear in the claim language." *Id.* "The claim identifies no file structure, storage architecture, or transfer protocol that yields the asserted storage savings or preserves tags across devices." *Id.* MyPort's expert declaration does nothing to remedy this failure: it merely restates the same argument regarding improvements, without any support rooted in the claims themselves.

Second, MyPort's expert's legal conclusions do warrant leave to amend. For example, multiple times MyPort's expert quotes the patent and then offers a conclusory statement that, as a result, the claims "are inventive," (D.I. 41-03 ¶ 623), or that the claimed "first data converter is well understood, conventional, or routine," (*id.* ¶ 627). These statements are not facts at all—they are legal opinions on patent eligibility. As this Court previously explained, "conclusory allegations, such as legal conclusions . . . are not entitled to the presumption of truth." D.I. 37 at 2 (citing *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016)). Moreover, the Court has already rejected these conclusions. *See* D.I. 37 at 10 (rejecting MyPort's assertion that "the inventive concept of improving technology by unifying the representation of and access to files

and data across all a user's devices shines through" and finding instead that "MyPort never explains how this differs from longstanding indexing and storage practices").

MyPort's expert's opinions are thus not "new" factual allegations. Instead, they are recycled arguments already considered and rejected by the Court in ruling on Apple's Motion to Dismiss. Accordingly, they do not warrant revisiting this Court's prior determination on patent ineligibility.

### 3. The EDTX Summary Judgment Order Did Not Find that the Asserted Claims Cover Patentable Subject Matter

The two-sentence decision from the *MyPort v. Samsung* litigation that is attached to the FAC also does not provide a basis for this Court to alter its patent eligibility analysis. The entirety of the relevant *MyPort v. Samsung* decision is shown below.

> 5. **Samsung's Motion for Summary Judgment of Invalidity Under 35 U.S.C. § 101 (Dkt. No. 122).**
>
> This Motion was **GRANTED-IN-PART** and **DENIED-IN-PART**. The Court found that the patents-in-suit were directed to an abstract idea under Step 1 of *Alice*, and that there were outstanding fact issues under Step 2 of *Alice*.

FAC Ex. D, at 2. A court's bare legal conclusion in another case does not give rise to a factual dispute here, nor a compelling reason for this Court to set aside its analysis. This Court should grant the Texas court's non-binding order no weight.

### 4. MyPort's References to Apple and Third-Party Patent Filings Are Irrelevant to Patent Eligibility

Finally, MyPort's allegations regarding Apple and third-party patent activity have no bearing on the patentability analysis and thus cannot save MyPort's claims. Tellingly, MyPort does not identify either allegation as a reason for this Court to grant leave to amend, nor does its motion explain how these points could affect the Court's Section 101 analysis.

First, MyPort alleges that the Asserted Patents "have been cited as prior art in over 100 subsequent patent applications around the world by leading technology companies including Google, Sony, IBM, and Cisco Technology, demonstrating their recognized role as technological advancements." FAC ¶ 31. The fact that the Asserted Patents have been cited as prior art in other patent applications is irrelevant to whether the Asserted Patents claim a patent-eligible concept. Patent applicants are required to disclose to the Patent Office all known prior art without making any assessment as to eligibility. MPEP § 2001.04 ("Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section."); *see also Data Scape Limited v. Western Digital Corp.*, 816 Fed. Appx. 461, 465 (Fed. Cir. 2020) (finding "citations to patents from other companies citing various [plaintiff] patents do nothing to suggest the Asserted Patents accomplished a technical solution."). A citation therefore reflects nothing more than the applicant's compliance with disclosure obligations and does not suggest, as MyPort alleges, that the cited patent embodies an "inventive concept."

Second, MyPort asserts that "Apple attempted to patent similar MyPort technology" in a 2013 application titled "Voice-Based Image Tagging and Searching," but then later abandoned the application following rejection by the Patent Office. FAC ¶ 32. MyPort offers no factual support for its conclusory assertion that Apple's application was "similar [to] MyPort technology." Even if that were true, this says nothing about whether the Asserted Patents claim patent-eligible subject matter. The Section 101 analysis is done on a claim-by-claim basis, with reference to the specification, not by looking at general technology areas and assessing whether abandoned patent applications have been filed in that same space.

### B.     This Court Should Dismiss the '998 Patent with Prejudice

Separately, this Court should dismiss MyPort's prior allegation that Apple infringes the '998 patent with prejudice because MyPort has expressly abandoned that claim and omitted it from the proposed FAC.  D.I. 41 at 1–2 ("MyPort's proposed Amended Complaint asserts [the Asserted Patents], while dropping the assertion of [the '998 patent].").  MyPort has forgone its full and fair opportunity to amend, so dismissal with prejudice is warranted.  *See Bial-Portela v. Alkem Labs. Ltd.*, No. 18-304-CFC-CJB, 2022 U.S. Dist. LEXIS 193028, at *8 (D. Del. Oct. 24, 2022) (holding withdrawn patent claims were withdrawn with prejudice to avoid potentially "endless" future litigation); *Exeltis USA, Inc. v. Lupin Ltd.*, No. 22-434-RGA, 2024 U.S. Dist. LEXIS 196789, at *4–5 (D. Del. Oct. 29, 2024) (denying a motion to voluntarily dismiss *without* prejudice to ensure that plaintiff could not "bring the dismissed claims in a second lawsuit"); *Shure Inc. v. Clearone, Inc.*, No. 19-1343-RGA, 2022 U.S. Dist. LEXIS 95425, at *3 (D. Del. May 27, 2022) (dismissing, with prejudice, tort claims withdrawn by a plaintiff in a patent litigation action where the claims were "poised for a final disposition").

### VII.     <u>CONCLUSION</u>

Because the asserted patents are ineligible as a matter of law and the proposed amendments cannot cure that defect, dismissal with prejudice is warranted.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (leave to amend may be denied where amendment would be futile).  MyPort has now had its chance to identify new, claim-tethered facts that could change the Court's patentability determination and has failed to do so.  The Court should therefore deny leave and dismiss the FAC with prejudice.

Dated:  November 14, 2025

FISH & RICHARDSON P.C.

*/s/ Susan E. Morrison*

Susan E. Morrison (#4690)
Nitika Gupta Fiorella (#5898)
FISH & RICHARDSON P.C.
222 Delaware Ave., 17th Floor
Wilmington, DE 19801
Telephone: (302) 652-5070
morrison@fr.com
fiorella@fr.com

Roger A. Denning (*pro hac vice*)
Joy Backer Kete (*pro hac vice*)
12860 El Camino Real, Suite 400
San Diego, CA 92130
Telephone: 858-678-5070
denning@fr.com
kete@fr.com

Jacqueline T. Moran (*pro hac vice*)
909 Fannin Street, Suite 2100
Houston, TX 77010
Telephone: 713-654-5300
jtmoran@fr.com

Noah C. Graubart (*pro hac vice*)
1180 Peachtree Street NE, 21st Floor
Atlanta, GA 30309
Telephone: 404-892-5005
graubart@fr.com

Scott M. Flanz *(pro hac vice)*
Kyle J. Fleming (*pro hac vice*)
Alexander R. Mazza *(pro hac vice)*
7 Times Square, 20th Floor
New York, NY 10036
Telephone: 212-765-5070
flanz@fr.com
kfleming@fr.com
mazza@fr.com

***Attorneys for Defendant,***
***APPLE INC.***

21